IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WISCONSIN ALUMNI RESEARCH FOUNDATION,

                          Plaintiff,                        OPINION & ORDER

        v.                                                       14-cv-062-wmc

APPLE INC.,

                          Defendant.

        In this patent lawsuit, plaintiff Wisconsin Alumni Research Foundation
("WARF") alleges that defendant Apple Inc. infringes U.S. Patent No. 5,781,752 ("the
'752 patent"), titled "Table Based Data Speculation Circuit for Parallel Processing
Computer."  Currently pending before the court is WARF's motion to dismiss Apple's
affirmative defense and counterclaim for inequitable conduct.  (Dkt. #44.)  Having
reviewed the briefs and the relevant case law, the court will grant WARF's motion.
Because WARF has not shown that amendment would be futile, however, the court will
dismiss the counterclaim without prejudice.


                                    BACKGROUND

        On January 31, 2014, WARF filed its complaint alleging infringement of the '752
patent. That patent discloses a "predictor circuit [that] permits advanced execution of
instructions depending for their data on previous instructions by predicting such
dependencies based on previous mis-speculations detected at the final stages of

processing." ('752 patent (dkt. #1-1) Abstract.)   By way of illustration, Claim 1 provides:

> In a processor capable of executing program instructions in an execution order differing from their program order, the processor further having a data speculation circuit for detecting data dependence between instructions and detecting a mis-speculation where a data consuming instruction dependent for its data on a data producing instruction of earlier program order, is in fact executed before the data producing instruction, a data speculation decision circuit comprising:
>
> a) a predictor receiving a mis-speculation indication from the data speculation circuit to produce a prediction associated with the particular data consuming instruction and based on the mis-speculation indication; and
>
> b) a prediction threshold detector preventing data speculation for instructions having a prediction within a predetermined range.

('752 patent, at 14:36-53 (emphasis added).)[1]

WARF alleges that a certain number of Apple's processors (including but not limited to the A7 processor) and products that include such processors (*e.g.*, the iPhone 5S, iPad Air, and iPad Mini with Retina Display) infringe the '752 patent.   (*See* Compl. (dkt. #1) ¶¶ 4-5, 21.)   In its Amended Answer, Apple disputes infringement and affirmatively alleges that the '752 patent is unenforceable due to inequitable conduct. (1st Am. Answer & Counterclaims (dkt. #40) ¶¶ 21-54 [hereinafter "Counterclaims"].)[2] Specifically, Apple alleges that Drs. Sohi and Moshovos committed inequitable conduct by failing to disclose two references to the PTO during the prosecution of the '752 patent: (1) U.S. Patent No. 5,619,662 ("the Steely Patent"); and (2) an article by James

---

[1] The named inventors in the '752 patent include Drs. Moshovos, Breach, Vijaykumar and Sohi of the University of Wisconsin.

[2] Unless otherwise noted, citations are to paragraph numbers under the heading "Counterclaims," beginning on page seven of the First Amended Answer and Counterclaims.

E. Smith, entitled "A Study of Branch Prediction Strategies" (the "Smith Article"). (*Id.* at ¶¶ 24-33, 39-47, 50-52.)   Apple alleges that Professors Sohi and Moshovos "made affirmative statements" that were "false in light of" the omitted references, and that an intent to deceive the PTO can be inferred from their financial interest in the patent.  (*Id.* at ¶¶ 34-40, 48-51.)

OPINION

A motion to dismiss does not test the merits of a pleading, but rather the sufficiency of its allegations as pled.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is warranted when the pleading "fails to allege enough facts to raise a reasonable expectation that discovery will reveal evidence supporting [those] allegations." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 901 (W.D. Wis. 2010).  Where, as here, a party makes an allegation of fraud on the PTO, Rule 9(b) of the Federal Rules of Civil Procedure also requires dismissal if the claim is not pled with sufficient factual particularity.  *Id.; see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (addressing inequitable conduct in the Rule 12(b)(6) context).

To establish that a patent is unenforceable because of inequitable conduct, the challenger must prove "by clear and convincing evidence" that an individual associated with the filing and prosecution of the application:  (1) made an affirmative representation of material fact, failed to disclose material information or submitted false

material information; and (2) intended to deceive the Patent and Trademark Office.  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).  Thus, to state a claim for inequitable conduct, a pleading must contain "sufficient allegations of underlying facts from which a court may reasonably infer that an individual (1) knew of the withheld material information or the falsity of the information, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29; *see also Semiconductor Energy*, 749 F. Supp. 2d at 902. To plead these underlying facts with sufficient particularity, a party must identify "the specific who, what, when, where, and how of the material misrepresentation or omission." *Exergen*, 575 F.3d 1327 (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)).

## I.  Materiality

### A.  General "But-For" Pleading

Apple's pleading of materiality falls short both generally and with respect to the specific prior art references.

To begin, a party alleging inequitable conduct must first identify specific facts from which the court could infer that at least one claim of the patent would not have issued if the Examiner had been aware of the references allegedly withheld.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) ("[T]he materiality required to establish inequitable conduct is but-for materiality . . . . [P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").  More specifically, the Federal Circuit has held that in pleading inequitable conduct, a party must "identify the particular claim limitations, or

combination of claim limitations, that are supposedly absent from the information of record" in sufficient detail to "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30 (citing *Larson Mfg. Co. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1333 (Fed. Cir. 2009)).

From the outset, there are problems with Apple's allegations of materiality.  As WARF points out, Apple merely alleges that the Examiner would "likely" not have allowed the claims to issue had Drs. Sohi and Moshovos disclosed the two references. (Counterclaims (dkt. #40) ¶¶ 28, 39, 50.)

Perhaps this is all Apple's counsel could allege in good faith at the outset of the suit, but the choice of the word "likely" is not entirely in line with the but-for materiality that a claim of inequitable conduct requires.  Either the PTO would have disallowed the claim upon disclosure of the prior art references or it would not.  Anything in between, as inferred from Apple's use of the word "likely," fails to meet the threshold required by Rule 9(b).[3]

## B.  The Steely Patent

Apple's inequitable conduct defense is primarily founded on the Steely Patent. With respect to that reference, the counterclaim alleges the following:

---

[3] Admittedly, other portions of Apple's counterclaims do a better job of pleading the requisite level of materiality.  (*See, e.g.*, Counterclaims (dkt. #40) ¶ 30 (stating that the Steely Patent "invalidates" claims of the '752 patent).)  Perhaps the inconsistencies in Apple's allegations of materiality might be overlooked in an initial pleading, but as set forth below, these deficiencies are repeated in specific allegations of the materiality for each of the two prior art references underlying Apple's inequitable conduct counterclaim.

29. The Steely Patent describes a processor architecture that allows load instructions to speculatively execute ahead of store instructions. **This is the same subject matter as the '752 patent.** Like the '752 patent application, the Steely Patent discloses a mechanism for predicting when a particular instruction is likely to mis-speculate and, if a mis-speculation is predicted, prevents speculation for that instruction.

30. The Steely Patent is material to the patentability of the '752 patent because **(1) by itself or in combination with other prior art, it invalidates claims of the '752 patent**, including at least the independent claims, and (2) it is inconsistent with positions taken by the Applicants during the prosecution of the '752 patent.

(Counterclaims (dkt. #40) ¶¶ 29-30 (emphasis added).)

As previously noted, the Federal Circuit explicitly addressed the pleading standards applicable to a claim of inequitable conduct in *Exergen.* To satisfy the heightened pleading requirements of Rule 9(b), "the pleading must identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329; *see also, e.g., Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, 2012 WL 1952977, at *7 (E.D. Wis. May 29, 2012) (emphasis added) (dismissing inequitable conduct allegations where the "Invalidity Contentions" for the patents-in-suit did "not sufficiently explain where in each item of prior art the elements of the claims . . . are found") (quoting *Exergen*). Furthermore, the pleading must go beyond stating generally that withheld references are material and not cumulative; it must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record" in order to "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." 575 F.3d at 1329-30 (citing *Larson*, 559 F.3d at 1333).

6

Apple's current allegations entirely fail to meet this standard for at least two reasons.  *First*, merely alleging that the Steely reference discloses the same "subject matter" as the '752 patent falls woefully short of the correct level of particularity to plead inequitable conduct premised on anticipation, since Apple makes no attempt to identify (1) the particular claim limitations, or combination of limitations, that are supposedly absent from the record before the Examiner, and (2) the specific material, non-cumulative disclosures in the Steely Patent.[4]   (*See* Counterclaims (dkt. #40) ¶ 29.) Without identifying *all* of the specific, material disclosures in the Steely Patent and where they are found, there is obviously little chance for the court to discern "how" the Examiner would have used the Steely Patent to invalidate the particular claims of the '752 patent.[5]

_____

[4] In its brief, Apple contends that paragraphs 36-38 provide further factual content to support the inequitable conduct defense.  While there is some detail in these paragraphs, they do not cover each and every claim limitation in the '752 patent. For example, there is no reference to a "prediction threshold detector."  ('752 patent, at 14:50.)  Moreover, to allege that the Steely Patent discloses a "predictor" is not enough.  As can be gleaned by nothing more than a facial review of the claim, the "predictor" is qualified as being one "receiving mis-speculation indication from the data speculation circuit to produce a prediction association with the part data consuming instruction…"  (*Id.* at 14:45-48.)  Nothing in the pleadings addresses this qualification.  Certainly, the allegations at paragraphs 36-38 fail to get Apple over the line at this juncture for the purposes of demonstrating that the Steely Patent "by itself" would prevent allowance of the '752 patent.  To make amends for this deficiency, Apple must specifically allege which claim limitations in the '752 patent align with the disclosures in the Steely Patent.  *See Exergen*, 575 F.3d at 1327-1329.

[5] Apple may have a difficult time proving its claim that the Steely Patent anticipates the '752 patent, since Judge Crabb appears to have already rejected that argument.  *See Wis. Alumni Research Foundation v. Intel Corp.*, 656 F. Supp. 2d 898, 921-923 (W.D. Wis. 2009). Nevertheless, if Apple seeks to proceed with the theory, it may, of course, do so.  As discussed above, Apple may also proceed with the theory that the Steely Patent is material in combination with other references on grounds of obviousness.  As addressed above, however, it must plead with *what* other reference the Steely Patent could have been combined to make these references but for material.  *Exergen*, 575 F.3d at 1329.

*Second*, Apple alleges, without further detail, that the Steely Patent "in combination with other prior art . . . invalidates claims of the '752 patent." (Counterclaims (dkt. #40) ¶ 30.) This verbiage is similarly insufficient. If the basis for Apple's inequitable conduct claim is that the '752 patent would have been deemed obvious had the Examiner considered the Steely Patent, then Apple must plead as much with specificity in an amended counterclaim. Stating simply that Steely Patent in "combination with other prior art" leaves critical questions unanswered. *What* is the other prior art of which Apple speaks? And *why* would the skilled addressee be motivated to combine in the first place? Nothing in the current counterclaim seeks to supply these missing factual allegations.

Even if Apple intends to rely on a theory that the Steely Patent can be combined with common general knowledge of the person skilled in the art, then it must make some effort to identify that knowledge. While a high standard, this is precisely what Rule 9(b) and Federal Circuit case law require given the seriousness of an inequitable conduct claim. *See Therasense,* 649 F.3d at 1289-90 (discussing inequitable conduct doctrine as "a doctrine that has been overused to the detriment of the public"). Without demanding specificity, not only is the rule's purpose violated, but the good names of inventors will continue to be dragged through the mud of spurious claims.

This is not to say that there are *not* facts that can be pled to support Apple's inequitable conduct defense with specificity. On the contrary, Apple has filed a Petition with the Patent Office for Inter Partes Review ("IPR"). Given the specificity and detail alleged in its IPR Petition, Apple should not find the process of identifying combinations

in this litigation unduly burdensome. (*See* dkt #52-1.)

Instead, what the court is pointing out is that Apple has yet to plead those facts *in this case*, leaving this court to speculate.  As such, the failure to identify *any* specific prior art reference or common general knowledge that in combination with the Steely Patent makes the '752 patent obvious renders Apple's counterclaim wholly deficient. [6]

### C. The Smith Article

Apple's inequitable conduct defense also relies on the Smith Article. With respect to that reference, it alleges the following:

> 43. The Smith Article discloses a variety of predictors that are used for dynamically predicting the outcome of control instructions. These branch predictors are **analogous** to load/store predictors, and a predictor used to predict branches **could be used** to predict data dependencies as described in the '752 patent. The Smith Article thus contains disclosures that are material to the patentability of the '752 patent.

> 44. The Smith Article was also material to the patentability of the '752 patent because, **in combination with other prior art**, it invalidates one or more claims of the '752 patent.

---

[6] WARF also contends that the Steely Patent cannot be but-for material because the prosecution history of the '752 patent confirms that the Steely Patent was actually before the Examiner. Specifically, WARF asserts that the Steely Patent was listed on the first page of a September 30, 1997 Search Report by Examiner Krisna Lim.  (Christopher T. Abernethy Decl. Ex. A (dkt. #45-1) 1 (Examiner Search Report citing "5,619,662, Apr. 8, 1997, Memory reference tagging; Simon C. Steely, Jr., et al." as reference number seven).)  Because the Search Report forms part of the '752 patent's official file history, WARF contends that there is no basis for the allegation that the Steely Patent was not before the Examiner, meaning it cannot give rise to an inequitable conduct claim.  *See, e.g.*, *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349-50 (Fed. Cir. 2007) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner.") (quoting *Scripps Clinic & Research Found. v. Genentech, Inc.*, 972 F.2d 1565, 1582 (Fed. Cir. 1991)). In response, Apple argues that simply because the title of the Steely Patent appears on a search report, that does not mean that the Examiner has "considered" the reference for validity purposes, citing *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1236 (Fed. Cir. 2003).  While it appears that Apple may have a difficult time proving materiality in light of *Scripps*, resolution of this issue is best left to summary judgment.  Indeed, most of the cases that the parties cited on this issue were set in the summary judgment context.

(Counterclaims (dkt. #40) ¶¶ 43-44 (emphasis added).)

As set forth above, Apple does not allege that the Smith Article is novelty-defeating by itself.  Instead, Apple alleges that the reference is merely "analogous"[7] to the '752 patent and invalidates one or more claims of the '752 patent "in combination with other prior art." Essentially, Apple alleges that after reviewing the Smith Article, the Examiner would not have allowed issuance of the patent on obviousness grounds.  Again, however, Apple pleads its inequitable conduct claim with insufficient specificity.  Most fundamentally, the language of the counterclaim -- "in combination with other prior art" -- lacks the specificity demanded by Rule 9(b). *See Exergen*, 575 F.3d at 1329; *Milwaukee Elec.*, 2012 WL 1952977, at *7.  As with the Steely Patent, Apple neither explains *why* the Smith Article is material nor *how* the Examiner would have used it to assess obviousness.  Instead, the allegations amount to mere conclusions, while failing (a) to identify what claims of the '752 patent are allegedly invalidated, (b) to compare the disclosures of the Smith Article to particular claim elements, and (c) to identify any specific "other prior art" reference that "in combination with" the Smith Article allegedly renders any claim of the '752 patent obvious. Accordingly, Apple has failed to adequately plead materiality.

---

[7] In the context of anticipation, merely being "analogous" is not sufficient, since the Federal Circuit has held "that a claim is invalid under § 102 if and only if each and every limitation of the claim is *literally* present in a single prior art reference." *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1292 n.1 (Prost, J., dissenting) (emphasis added). Thus, the doctrine of equivalents is irrelevant to an anticipation analysis, although the Federal Circuit has observed that it is "somewhat akin to obviousness." *Id.* (quoting *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 748 (Fed. Cir. 1987)).

## II.  Deceptive Intent

Apple also fails to plead the required element of deceptive intent for each of its inequitable conduct claims.  Under *Exergen,* to plead scienter adequately, a party must allege sufficient facts to infer actual knowledge of "*specific information* . . . that is alleged to be material to the claims*" of the patent in suit.  575 F.3d at 1330 (emphasis added).  A party must also plead facts that plausibly suggest a "'deliberate decision to withhold a known material reference' or to make a knowingly false misrepresentation."  *Id.* at 1331 (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)).

Under this standard, deficiencies with the intent prong exist with regard to both the Steely Patent and the Smith Article.  *First*, the same deficiencies with respect to materiality undermine Apple's attempt to plead scienter:  Apple does not identify the *specific information* alleged to be material to the '752 patent.  With respect to the Steely Patent, Apple alleges only that Drs. Moshovos and Sohi were aware of the Steely Patent generally (Counterclaims (dkt. #40) ¶ 24), and that Moshovos recognized that the Steely Patent "identified the same problem as the '752 patent earlier than did he and his co-inventors."  (*Id.* at ¶ 25.)  With respect to the Smith Article, Apple similarly alleges only that Drs. Moshovos and Sohi were aware of the Smith Article generally and that they were aware of "the materiality of the Smith Article's discussion of 'branch prediction' to the subject matter of the '752 patent."  (*Id.* at ¶ 26.)

These threadbare allegations do not make plausible Apple's theory that Drs. Moshovos and Sohi knew of specific, *material* information in those references.  Identifying the same problem as the patent in suit or discussing a related solution does

not render a reference "but-for" material.  Since that is all the "specific information" Drs. Moshovos and Sohi are alleged to have known about the allegedly undisclosed Steely Patent and Smith Article, Apple's scienter allegations are deficient under *Exergen*.

*Second*, to allege the requisite "deliberate decision" to deceive, Apple alleges generally that Drs. Moshovos and Sohi (1) knew of the Steely Patent and Smith Article; and (2) had a financial interest in seeing the '752 patent issue.  The first allegation necessarily fails because, as discussed above, Apple has not sufficiently alleged that they knew of *material portions* of those references.  As to the second allegation, the Federal Circuit has held that "any financial reward does not alone show an intent to deceive the USPTO."  *Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1253 (Fed. Cir. 2008).  Thus, Apple's inequitable conduct counterclaim again flounders.

*Third*, some of the "deceptive conduct" Apple alleges does not even clearly constitute deception.  For example, Apple alleges that "during prosecution of the '752 patent, Dr. Moshovos and Dr. Sohi made affirmative statements about the state of the art that were false in light of the Steely Patent." (Counterclaims (dkt. #40) ¶ 34.)   More specifically, according to Apple, Professors Sohi and Moshovos made false statements in response to an October 8, 1997, Office Action in which the Examiner rejected certain pending claims as anticipated by U.S. Patent No. 5,555,432 ("Hinton").[8]  (*Id.* at ¶¶ 35-

---

[8] WARF asks the court to take judicial notice of the materials in this Office Action, contending the materials demonstrate as a factual matter that Drs. Sohi and Moshovos did not make the alleged misstatements to the PTO.  Rather, the Response to the October 8, 1997 Office Action was signed and mailed by prosecuting patent attorney Keith M. Baxter. (See Dkt #45-2 at 2.) Given all of the other flaws in Apple's pleading, the court need not resolve the merits of this issue at this time, as it seems better suited to summary judgment.  Upon development of the factual record, if it is indeed indisputable that Drs. Sohi and Moshovos (or their authorized agent) did

37.)   Even more specifically, Apple cites statements in the Response to the foregoing Office Action that overcame a rejection based on anticipation by arguing that Hinton does not disclose, and in fact teaches away from, an exemplary claim element.[9]   (*Id.* at ¶¶ 35 & 37.)   Apple contends that the statements WARF made to overcome anticipation by Hinton were somehow "false" because the ostensibly "distinguished" claim element was allegedly disclosed by the Steely Patent.   (*Id.* at ¶¶ 34 & 36-37.)

These factual allegations, however, seem to fold in upon themselves.   A statement concerning the Hinton reference and its disclosures can hardly be rendered "false in light of the Steely Patent" for the simple reason that it is a different reference.   In fact, even Apple concedes that "the applicants' statement that Hinton did not disclose a particular type of data predictor may have been technically true."   (Def.'s Br. Opp'n (dkt. #46) 18.) A fair reading of the allegations in the counterclaims, therefore, raises the question how the Steely Patent renders a "technically true" statement regarding *an entirely different reference* vulnerable to an inequitable conduct challenge.   Indeed, it is unclear how the Hinton reference plays into the validity of the '752 patent *at all*, at least on the face of the pleadings.

---

not make specific, factual misrepresentations, this may undermine the merits of WARF's inequitable conduct theory.

[9] Apple does *not* allege that the statement in question mischaracterized the *Hinton* reference, even though this appears to be precisely what Apple asks the court to infer on a plain reading of the counterclaims.   Perhaps there is alternative phrasing that may give rise to a different inference, but Apple will need to be mindful of the fact that "mere attorney argument" concerning a prior art reference cannot support an inequitable conduct claim. *Innogenetics, NV v. Abbott Labs*, 512 F.3d 1363, 1379 (Fed. Cir. 2009) (affirming dismissal of inequitable conduct claim premised on alleged mischaracterization of a prior art reference during prosecution, explaining that "our precedent has made clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art").

Dismissal of a claim is warranted when the pleading "fails to allege enough facts to raise a reasonable expectation that discovery will reveal evidence supporting [those] allegations." *Semiconductor Energy,* 749 F. Supp. 2d at 901.  This is precisely the case here.  There is not even a reasonable expectation that discovery will support the allegations as pled because "anticipation requires all elements of a claim to be disclosed within a single reference," not two references.  *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008).  Thus, whether or not the *Steely Patent* disclosed the claim element in question has no relevance to overcoming the Examiner's anticipation rejection regarding *Hinton.*

### III.   Leave to Amend

WARF asks the court to dismiss Apple's counterclaim without leave to amend, arguing that the "sheer number of deficiencies" in the pleading demonstrates that Apple cannot meet the pleading standard of Rule 9(b).  A court should ordinarily grant leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Absent prejudice, dilatory motives or repeated failures to cure, this means that leave to amend is generally denied only where an amendment would be "futile," *Foman v. Davis*, 371 U.S. 178, 182 (1962), meaning that the pleading could not survive a second motion to dismiss.  Such is not the case here.

While Apple's pleadings suffer from the myriad deficiencies set forth above, the court is not persuaded that an amendment would be futile.  As noted above, Apple *may* be able to plead sufficient facts to comply with the high level of particularity required by Rule 9(b) and *Exergen*.  There is some question as to whether certain of Apple's theories

are foreclosed as a matter of law,[10] but the court will not presume this at the motion to dismiss stage.  Should Apple choose to amend, its new counterclaim must, of course, meet the strict requirements articulated in this opinion.  Otherwise, its inequitable conduct defense will be dismissed summarily with prejudice.

ORDER

IT IS ORDERED that plaintiff Wisconsin Alumni Research Foundation's motion to dismiss the inequitable defense counterclaim (dkt. #44) is GRANTED IN PART and DENIED IN PART, as set forth in the opinion above.  This counterclaim is, therefore, DISMISSED without prejudice.

Entered this 17th day of December, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[10] For example, WARF has advanced the argument that the Steely Patent cannot serve as a basis for a claim of inequitable conduct.  *See* footnote 6, *supra*.