# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| WISCONSIN ALUMNI RESEARCH FOUNDATION,<br><br>            Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>            Defendant. | Case No. 3:14-cv-00062-WMC<br><br>**FILED UNDER SEAL** |

## APPLE INC.'S MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

I.      Motion *In Limine* # 1:  WARF Should Be Precluded From Seeking Damages
        On Non-U.S. Sales Of The Accused Products....................................................................1

II.     Motion *In Limine* # 2:  WARF Should Be Precluded From Referring At Trial
        To The Total Profits, Revenues, Or Price Of Apple Products Or Apple's Total
        Net Worth Or Stock Value.......................................................................................8

III.    Motion *In Limine* # 3:  WARF Should Be Precluded From Seeking Damages
        On Sales Of The Accused Products Before The Complaint Was Filed..........................10

IV.     Motion *In Limine* # 4:  WARF Should Be Precluded From Offering Evidence
        Or Argument Regarding This Court's And The *Intel* Court's Summary
        Judgment Rulings..............................................................................................14

V.      Motion *In Limine* # 5:  WARF Should Be Precluded From Offering Evidence
        Or Argument Regarding The Patent Office's *Inter Partes* Review Proceedings
        For The '752 Patent. ...........................................................................................17

VI.     Motion *in Limine* # 6:  WARF's Validity Expert, Dr. Trevor Mudge, Should
        Be Precluded From Testifying About The Patent Office's IPR Rulings. ........................21

VII.    Motion *In Limine* # 7:  WARF Should Be Precluded From Offering Evidence
        Or Argument Regarding Apple's Future Products. ..........................................................23

VIII.   Motion *In Limine* # 8:  WARF Should Be Precluded From Offering Evidence
        Or Argument Suggesting That Apple "Copied" Or "Stole" WARF's Alleged
        Invention. ............................................................................................................24

IX.     Motion *In Limine* # 9:  WARF Should Be Precluded From Offering Evidence
        Or Argument For Secondary Considerations That Are Not Tied To The '752
        Patent...................................................................................................................31

X.      Motion *In Limine* # 10:  WARF Should Be Precluded From Offering Evidence
        Or Argument Regarding Infringement Under The Doctrine Of Equivalents For
        Certain Claim Elements. ......................................................................................37

XI.     Motion *In Limine* # 11:  WARF Should Be Precluded From Offering
        Testimony From Its Patent Law Expert, Stephen Kunin. ..................................................43

XII.    Motion *In Limine* # 12:  WARF Should Be Precluded From Offering Evidence
        Or Argument On the Subjective Prong Of The Willfulness Test Based On Any
        Evidence Other Than Knowledge Of The Patent By A Person Involved In The
        Allegedly Infringing Activity. ..............................................................................44

XIII.   Motion *In Limine* # 13:  WARF Should Be Precluded From Offering Evidence
        Or Argument Regarding Exhibit 5 To The Deposition Of Ms. Deanna Moris. ...............49

XIV.      Motion *In Limine* # 14:  WARF Should Be Precluded From Referring To
          Itself As A "Charity" Or Discussing What It Does With Its Money Other Than
          To Pay Inventors. ...................................................................................................53

XV.       Motion *In Limine* # 15:  WARF Should Be Precluded From Presenting
          Evidence Or Argument Concerning The University Of Wisconsin's Financial
          Condition. ................................................................................................................54

XVI.      Motion *In Limine* # 16:  WARF Should Be Precluded From Referring To The
          Number Of Attorneys, Residence Of Attorneys, And Size And Location Of
          The Law Firms Employed By Apple. .....................................................................56

XVII.     Motion *In Limine* # 17:  WARF Should Be Precluded From Offering Evidence
          Or Referring To Irrelevant Aspects Of Apple's Business. ....................................57

XVIII.    Motion *in Limine* # 18:  WARF Should Be Precluded From Referring To
          Other Litigations Involving Apple. .......................................................................58

XIX.      Motion *in Limine* # 19:  Reference To Discovery Disputes Or The Sufficiency
          Of Either Party's Discovery Responses Should Be Excluded From Trial. ..........60

XX.       Motion *In Limine* # 20:  WARF Should Be Precluded From Offering Into
          Evidence Or Relying On Documents That It Produced On The Last Day Of
          Discovery. ...............................................................................................................60

XXI.      Motion *In Limine* # 21:  Trial Should Be Held On Liability And Damages
          Together, Followed By A Brief Second Phase On Subjective Willfulness If
          Necessary. ...............................................................................................................62

I.      **Motion *In Limine* # 1:  WARF Should Be Precluded From Seeking Damages On Non-U.S. Sales Of The Accused Products.**

A patentee may only recover damages on products that are made, used, sold, or imported into the United States.  *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007) ("The traditional understanding that our patent law 'operate[s] only domestically and do[es] not extend to foreign activities,' is embedded in the Patent Act itself, which provides that a patent confers exclusive rights in an invention within the United States." (citations omitted)); *Brown v. Duchesne*, 60 U.S. 183, 195-96 (1856) ("[T]the use of [a patent] outside of the jurisdiction of the United States is not an infringement of his rights, and [a patentee] has no claim to any compensation for the profit or advantage the party may derive from it.").  WARF therefore should not be permitted to try to recover damages at trial on accused products that were never made, used, sold, or offered for sale in the United States, or imported into the United States.[1]

WARF accuses Apple processors that are used in the A7, A8, and A8X "Systems on a Chip" ("SoCs") of infringing the '752 patent.  Taiwan Semiconductor Manufacturing Company ("TSMC") makes the accused processors used in the A8 and A8X SoCs.  (Dkt. 266 (McNamara Dep.) at 250:25-251:7; Ex. 1 (CDM All Hands) at APL-WARF_0000415391-92.) ███

███ (Dkt. 266 (McNamara Dep.) at 250:25-251:7.) ███

███

███ (*Id.* at 58:5-15; Dkt. 243 (Lawton Report) ¶¶ 104, 311 ███

███

███) Some of these end products are imported into the United States.  Other

---

[1]      If this motion is granted, WARF's maximum damages claim would decrease from ███ ███ and the maximum damages number set forth by Apple's damages expert would decrease from ███  If Apple's Motions *in Limine* # 1 and 3 are both granted, WARF's maximum damages claim would be ███ and the maximum damages number set forth by Apple's damages expert would be ███.

end products with the processors made by TSMC never enter the United States and are sold only overseas.   (Dkt. 243 (Lawton Report)  ¶¶ 694-697 (WARF's damages expert admitting that millions of accused products are not manufactured or sold in the United States and are not imported into the United States).)

Samsung manufactures the processors that are used in the A7 SoCs.   (Dkt. 266 (McNamara Dep.) at 69:20-22.) ███████████████████████████████ ███████████████████ (Ex. 2 (Total iPhone Chips Manufactured at Samsung TX Plant); Dkt. 243 (Lawton Report) at Table 19.) ██████████████████████████████ ████████████████████████████████████████████████████████ (Dkt. 266 (McNamara Dep.) at 53:10-54:4, 55:7-16.) ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████

 ▪ ████████████████████████████████████████████ ████████████████████

 ▪ ██████████████████████████████████████████████████

 ▪ ████████████████████████████████████

 ▪ ████████████████████████████████████

 ▪ ██████████████████████████

 ▪ ██████████████████████████

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████

███████████████████████████████████████

████████████████████████ (Dkt. 266 (McNamara Dep.) at 58:5-15; Dkt. 243 (Lawton Report)

¶¶ 104, 311.)  As is the case with respect to products that include processors made by TSMC,

these end products are either imported into the United States or sold only outside the United

States.  (Dkt. 243 (Lawton Report) ¶¶ 694-697.)

### A. WARF Should Be Precluded From Seeking Damages On Accused Processors That Are Never Sold In Or Imported Into The United States.

In her expert report, WARF's damages expert Catharine Lawton asserts that WARF may

seek damages on:  (1) processors that were made by TSMC and Samsung entirely in ████████ or

████████ and that were never sold in or imported into the United States; and (2) processors that

were initially fabricated by Samsung in part in ████████ but were completed overseas and never

sold in or imported into the United States after completion.  (Dkt. 243 (Lawton Report) ¶¶ 316,

697.)  Damages are not recoverable on either category.

### 1. WARF should be precluded from seeking damages at trial on processors made entirely outside the United States and never imported into or sold in the United States.

In *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 2015 WL 4639309

(Fed. Cir. Aug. 4, 2015), the Federal Circuit recently held that "given the required strength of the

presumption against extraterritoriality," only domestic manufacture, use, sale, or importation can

infringe a U.S. patent and give rise to damages.  *Id.* at *20 ("Where a physical product is being

employed to measure damages for the infringing use of patented methods, we conclude,

territoriality is satisfied when and only when any one of those domestic actions for that unit (e.g.,

sale) is proved to be present ....").  Because processors that were made by TSMC in ████████ or by

Samsung in ████████ and that were never shipped to or sold in the United States cannot infringe a

U.S. patent, WARF cannot recover damages on these processors.

WARF makes three arguments in its expert reports to try to recover damages on processors made and sold entirely outside the United States.  None supports recovery.

**First**, WARF has argued that it can recover damages on processors made and sold entirely outside the United States under 35 U.S.C. § 271(f)(1) and (2) because Apple sends TSMC and Samsung specifications and design information referred to as a "GDS file."  (Dkt. 105 (Conte Infringement Report) ¶ 1102.)  But a defendant cannot be liable under 35 U.S.C. § 271(f)(1) or (2) unless it supplies or causes to be supplied physical "component[s]" of the accused products from the United States while intending or inducing the components to be combined in an infringing manner abroad.  That has not happened here.  The Federal Circuit has held that specifications and design information are not "components" for purposes of § 271(f).  *See Pellegrini v. Analog Devices, Inc*., 375 F.3d 1113, 1118 (Fed. Cir. 2004) ("'[S]uppl[ying] or caus[ing] to be supplied' in § 271(f)(1) clearly refers to physical supply of components, not simply to the supply of instructions or corporate oversight.").  The physical components of the accused processors that are made by TSMC and Samsung outside the United States are supplied by TSMC in ▮▮▮▮▮ or by Samsung in ▮▮▮▮.  (Dkt. 266 (McNamara Dep.) at 250:25-251:7 (TSMC makes processors of A8 and A8X entirely in ▮▮▮▮); (Ex. 2 (Total iPhone Chips Manufactured at Samsung TX Plant); Dkt. 243 (Lawton Report) at Table 19 (Samsung makes portion of total number of processors used in the A7 entirely in ▮▮▮▮).)

**Second**, WARF has argued that it can recover damages on processors made and sold entirely outside the United States under 35 U.S.C. § 271(b) and (c), which govern indirect infringement.  WARF alleges that Apple induced and contributed to TSMC and Samsung's infringement by hiring TSMC and Samsung to manufacture processors and providing them specifications and design information.  (Dkt. 105 (Conte Infringement Report) ¶¶ 1085-1093.)

But a defendant cannot be liable for indirect infringement unless a third party directly infringes the patent. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) ("[L]iability for inducement must be predicated on direct infringement."). Direct infringement can only occur in the United States. *See Carnegie Mellon*, 2015 WL 4639309, at *20 (Section 271(a) reaches "making or using or selling in the United States or importing into the United States"). Actions that TSMC and Samsung took outside the United States therefore cannot constitute infringement and cannot give rise to indirect infringement. 35 U.S.C. § 271(c) ("Whoever offers to sell or sells **within the United States** or imports **into the United States** a component of a patented machine, manufacture, combination or composition …." (emphasis added)); *Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 659 n.3 (E.D. Tex. 2009) (rejecting contributory infringement theory based on foreign supply of a component because "section 271(c) has been amended to only cover conduct 'within the United States'").

*Finally*, WARF has argued that because "all" of Apple's testing of accused processors takes place in the United States, Apple is liable for processors made and sold entirely outside the United States. (Dkt. 243 (Lawton Report) ¶ 316.) But WARF has not shown that Apple does anything beyond test a few processor "samples" in the United States. (Dkt. 266 (McNamara Dep.) at 53:3-7 (Apple only receives processor samples in the United States); Dkt. 245 (Lawton Dep.) at 348:25-349:10 (WARF's damages expert admitting that she "ha[s]n't seen any records or documents that would show the volume of that activity [testing] in the United States").) Nor can WARF make any showing that any of the processor samples that Apple tests in the United States are ultimately used in products sold outside the United States.

But more fundamentally, in *Carnegie Mellon*, the Federal Circuit rejected the argument that the accused infringer's testing in the United States allows the patentee to recover damages

on products sold abroad.  *See Carnegie Mellon*, 2015 WL 4639309, at *20-22.  The Court held that even with respect to products tested in the United States, "avoiding extraterritoriality … depends here on whether [the accused products] were sold in the United States, there being no other applicable basis in § 271(a) to justify including those chips."  *Id.* at *21; *see also id.* at *20 ("Although all of Marvell's sales are strongly enough tied to its domestic infringement as a causation matter to have been part of the hypothetical-negotiation agreement, that conclusion is not enough to use the sales as a direct measure of the royalty except as to sales that are domestic (where there is no domestic making or using and no importing).").  Accordingly, WARF should be barred from attempting to recover damages at trial on processors made and sold entirely outside the United States.[2]

**2.**     **WARF should be precluded from seeking damages at trial on processors initially fabricated in part in ▉▉▉▉ but never imported or sold in the United States.**

WARF's attempt to recover damages on the processors of the A7 SoC that Samsung initially fabricated in part in ▉▉▉ and then completed in ▉▉▉ and never sold or imported into the United States is also unavailing.  These processors cannot function—and therefore cannot infringe the '752 patent—unless and until additional manufacturing steps are performed in ▉▉▉ (Dkt. 266 (McNamara Dep.) at 55:7-56:6 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ 118:17-119:12 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉  Without an act of infringement in the United States, these processors cannot give rise to damages.  35 U.S.C. § 271(a).

---

[2]     The Federal Circuit also held in *Carnegie Mellon* that a patentee can recover damages on products physically shipped outside the United States if the "location of sale" occurred in the United States.  *See Carnegie Mellon*, 2015 WL 4639309, at *21.  WARF has not provided or attempted to provide any evidence that the "location of sale" of the accused processors that were made entirely outside the United States and never imported into the United States occurred in the United States.

6

WARF offers two arguments in support of its attempt to recover damages for these processors. None of those arguments is correct. ***First***, WARF has argued that Samsung is Apple's "agent" and that Apple is responsible for Samsung's actions in ████. (Dkt. 105 (Conte Infringement Report) ¶¶ 1055-1078.) As an initial matter, even if this were the case (and it is not), WARF cannot show that any infringement occurred in the United States because the processors that Samsung starts in ████ cannot function or infringe until additional actions are taken in ████ Further, there is no evidence that Samsung is Apple's agent. The manufacturing agreement between Apple and Samsung ████████████████████████████ ████████████████████████████. (Ex. 3 (Master Development and Supply Agreement) at APL-WARF_0001445283 ████████████████ ████████████████████████████

████ The evidence produced in this case confirms that Apple does not control Samsung's actions—which would be required to establish an agency relationship. (Ex. 1 (CDM All Hands) at APL-WARF_00004153192 ████████████████████████ ████████████ at 137:21-138:20 ████████████████████ ████████ *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (in order to establish agency relationship with third party, must show that party controls the actions of third party).

***Second***, WARF has argued that 35 U.S.C. § 271(f) permits it to recover damages on processors that Samsung starts in Texas but finishes abroad and are never sold in or imported into the United States. Specifically, WARF argues that Apple "caused" Samsung to supply components of the accused processors from Texas. (Dkt. 105 (Conte Infringement Report) ¶¶ 1097-1101.) But there is no evidence that Apple caused Samsung to do anything from Texas

or any other part of the United States.  The only record evidence shows that Apple has **no control** over how or where Samsung performs its manufacturing.  (Dkt. 266 (McNamara Dep.) at 98:6-99:7 ("Q. So Apple has no control over whether its SoC components are manufactured in Austin or Korea?  A. We don't control it.").)

WARF should not be permitted to extend the reach of the patent statute beyond the United States.  WARF should be precluded from seeking damages at trial on:  (1) processors made and sold entirely outside the United States; (2) processors that were initially fabricated in part in the United States but were completed abroad and never sold in or imported into the United States.

II.     **Motion *In Limine* # 2:  WARF Should Be Precluded From Referring At Trial To The Total Profits, Revenues, Or Price Of Apple Products Or Apple's Total Net Worth Or Stock Value.**

In *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014), the Federal Circuit held that where the patentee cannot satisfy the "Entire Market Value Rule" by showing that the patented feature is "the basis" for customer demand for the accused products, a corresponding "evidentiary principle" bars the patentee from referring to the entire value of the accused products at trial:

> While a number of our cases have referred to the concept of an entire market value "rule," the legal standard actually has two parts, which are different in character.  There is one substantive legal rule, and there is a separate evidentiary principle…  The point of the evidentiary principle is to help our jury system reliably implement the substantive statutory requirement of apportionment of royalty damages to the invention's value.  The principle, applicable specifically to the choice of a royalty base, is that, where a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product.

8

*Ericsson*, 773 F.3d at 1226.  The Federal Circuit explained that where the Entire Market Value Rule is not met, reference to the full value of the accused products could "mislead the jury into awarding an unduly high royalty."  *Id*. at 1227.

WARF admits that it cannot satisfy the Entire Market Value Rule.  (Dkt. 243 (Lawton Report) ¶¶ 399-407, 689 ("[I]t is my opinion that the Entire Market Value Rule Exception does not apply …."); Dkt. 245 (Lawton Dep.) at 340:3-6 ("Q. And you would agree with me, ma'am, that the entire market value rule is not satisfied in this case, correct?  A. That's correct.").)  Nonetheless, WARF has suggested that it will attempt to rely at trial on the total revenues, profits, and price of the accused products and other Apple products.  WARF's damages experts repeatedly cite this information in their expert reports.  (Dkt. 243 (Lawton Report) ¶¶ 114, 115, 121, 122, 124, 324, 658, 660, Charts 2, 3, 8, 12, 13 (citing Apple's net sales); *id*. ¶¶ 114, 117, 124, 441, 653-655, 666, Charts 2, 5, 8, 9, Figure 39 (citing Apple's gross margins); *id*. ¶¶ 116, 122, Charts 4 (citing Apple's total product shipments); *id.* ¶¶ 443, 467, 471 (citing total accused product price); Dkt. 275 (Knittel Report) ¶¶ 67, 94, Exs. 7, 8, 11, 16, 25, 26, 30, 31, 32, 33, 45, 46, 50-53 (using total price of accused products).)  WARF's experts also repeatedly cite Apple's total net worth and stock price.  (Dkt. 243 (Lawton Report) ¶¶ 118, 119, 122, 652, 653, 662, 778 Charts 6, 11 (citing Apple's market capital and share price); *id.* ¶¶ 120, 686 Charts 7 (citing Apple's liquidity).)

Because it is undisputed that the Entire Market Value Rule is not satisfied, the evidentiary principle of *Ericsson* precludes WARF from referring at trial to the total profits, revenues, or price of the accused products or other Apple products or Apple's total net worth or stock value.  *See Ericsson*, 773 F.3d at 1227 (where the Entire Market Value Rule is not satisfied, "reliance on the entire market value might mislead the jury"); *LaserDynamics, Inc. v.*

*Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("[O]ne way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only."); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2015 WL 1518099, at *13 (E.D. Va. Mar. 31, 2015) (excluding reference to revenue, sales, and volume of accused products and defendant's valuation, revenues, profitability, and cash reserves because plaintiff did not satisfy the Entire Market Value Rule).

### III.   Motion *In Limine* # 3:  WARF Should Be Precluded From Seeking Damages On Sales Of The Accused Products Before The Complaint Was Filed.

35 U.S.C. § 287 provides that a patentee's damages are limited to acts of infringement occurring after the complaint was filed *unless* the patentee:  (1) provided pre-suit notice of alleged infringement to the defendant; or (2) marked its products with the patent-in-suit and took reasonable steps to ensure that its licensees also marked their products with the patent.  *See* 35 U.S.C. § 287(a) ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe.").  WARF has not met either condition.[3]

*First*, it is undisputed that WARF did not provide Apple pre-suit notice of alleged infringement of the '752 patent-in-suit.  The only pre-suit communications between WARF and Apple ████████████████████████████████████████

████████████████████████████████████████

---

[3]     The highest damages number that WARF put forth in its damages expert report is ████. ████ If this motion is granted and WARF is precluded from seeking damages on sales of accused products before the complaint was filed, WARF's maximum  damages claim would decrease to ████████. The highest damages number set forth by Apple's damages expert is ████. This would decrease to ████████ if this motion is granted.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████    *See Amsted Indus. Inc.*

*v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("For purposes of section

287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or

ownership."); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)

("Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of

the identity of the patent and the activity that is believed to be an infringement, accompanied by

a proposal to abate the infringement, whether by license or otherwise.").

     ***Second***, WARF has not complied with the marking statute. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████    But WARF has a duty to make reasonable efforts to

ensure that any licensees to the '752 patent mark any of their products that practice the patent

11

with the '752 patent number. *See Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1111-12 (Fed. Cir. 1996) (patentee is required to make "reasonable efforts to ensure compliance with the marking requirements"); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-CV-00260-H WVG, 2014 WL 868594, at *2 (S.D. Cal. Jan. 31, 2014) ("[A] patentee must engage in 'reasonable efforts' to ensure that its licensees mark." (citations omitted)).  WARF licensed the '752 patent to Intel Corporation in 2009 after suing Intel for infringement.  (Dkt. 115 (Gulbrandsen Dep.) at 156:11-13.)



WARF has argued that it need not comply with the marking statute because *Apple* bears the burden of showing that Intel sold products that practice the '752 patent.  This is wrong for two reasons.  *First*, courts have held that the patentee—not the defendant—bears the burden on marking.  *See Kimberly-Clark Worldwide, Inc. v. First Quality* Baby *Products, LLC*, No. 1:09-CV-1685, 2013 WL 1821593, at *3 (M.D. Pa. Apr. 30, 2013) ("[Patentee] should fully bear the burden to prove compliance with the patent marking statute."); *WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010) ("[The patentee] bears the burden of showing that it, and its licensees, were not required to mark under § 287."); *DR Systems, Inc. v. Eastman Kodak*, No. 08-CV-0669 H (BLM), 2009 WL 2632685, at *4 (S.D. Cal. Aug. 24, 2009) (declining to require that the alleged infringer bear the "burden of identifying products covered by the patent").  *Second*, even if Apple did bear the burden on marking, Apple has met this burden.  As explained above, Apple deposed Intel's corporate witness and established that after

Intel licensed the '752 patent, Intel █████████████████████████████████

███████████████████████████████████████████

Because WARF did not provide Apple with pre-suit notice of alleged infringement and

has not taken any steps to comply with the marking statue, WARF should be precluded at trial

from attempting to recover damages for any sales that occurred prior to the date that WARF filed

suit—January 31, 2014.  *See* 35 U.S.C. § 287; *Inline Connection Corp. v. AOL Time Warner*

*Inc.*, 465 F. Supp. 2d 312, 321 (D. Del. 2006) (precluding patentee from recovering pre-litigation

damages when it failed to require its licensee to mark components of the practicing system).[5]

## IV.  Motion *In Limine* # 4:  WARF Should Be Precluded From Offering Evidence Or Argument Regarding This Court's And The *Intel* Court's Summary Judgment Rulings.

WARF should be precluded from offering evidence or argument regarding the Court's

summary judgment rulings and opinions in this case (Dkt. 193) and in *WARF v. Intel Corp.*, 656

F. Supp. 2d 898 (W.D. Wis. 2009) (Crabb, J.), which settled before trial.  Admission of such

evidence or argument, which has no probative value as to the factual issues that the jury will be

---

[5]      As set forth in Apple's Motion *in Limine* #8, in November 2013, Apple's patent prosecution counsel informed an Apple engineer that the Patent Office had identified the '752 patent as prior art to an Apple patent application.  WARF cannot use this to remedy its failure to comply with 35 U.S.C. § 287.  The Federal Circuit has held that whether the defendant happened to know of the patent-at-issue is irrelevant to the determination of whether the patentee satisfied 35 U.S.C. § 287 and when the damages period starts.  *See Amsted Indus. Inc. v. Buckeye Steel Castings Co*., 24 F.3d 178, 187 (Fed. Cir. 1994) ("It is irrelevant … whether the defendant knew of the patent or knew of his own infringement.  The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer."); *American Med. Sys., Inc. v. Medical Eng'g Corp*., 6 F.3d 1523, 1537 n.18 (Fed. Cir. 1993) ("AMS argues that MEC was notified in August 1986 by its own counsel, Krieger, that MEC was infringing the '765 patent.  This is clearly not what was intended by the marking statute.  Section 287(a) requires a party asserting infringement to either provide constructive notice (through marking) or actual notice in order to avail itself of damages.  The notice of infringement must therefore come from the patentee, not the infringer.").

asked to decide, would be unfairly prejudicial to Apple and would mislead and confuse the jury. It should therefore be excluded under FRE 402 and FRE 403.

*First*, WARF should not be permitted to tell the jury that this Court and the *Intel* court adopted WARF's proposed construction or rejected Apple's proposed construction for the term "prediction."  Of course, Apple agrees that the parties can—and should—refer to the Court's claim construction at trial.  (Dkt. 193, at 27 (construing the term "prediction" in the '752 patent as requiring "a prediction that is capable of receiving updates"); *Intel*, 656 F. Supp. 2d at 922 (same).)  In their expert reports (which were completed before the Court's summary judgment decision), Apple's experts analyzed infringement and validity using both WARF's proposed claim construction and Apple's proposed claim construction.  Now that the Court has construed the term "prediction," Apple and its experts will apply only the Court's construction at trial.  The jury will be instructed to apply the Court's construction of the term "prediction" when considering infringement and validity, but will not be asked to construe that term.  Because it is not relevant to the issues that the jury will be asked to decide and to avoid prejudicing Apple, WARF should be precluded from arguing or suggesting to the jury that the Court disagreed with Apple or its experts on claim construction, or that Apple or its experts proposed a claim construction for "prediction" that differed from the one adopted by the Court.

*Second*, WARF should not be permitted to refer to the Court's summary judgment rulings rejecting Apple's arguments regarding anticipation by Steely and indefiniteness.  (Dkt. 193, at 27-40.)  At trial, Apple's experts will not offer any opinions that Steely anticipates the asserted claims of the '752 patent or that the asserted claims of the '752 patent are indefinite. Nor are these issues that the jury will be asked to consider.  WARF should therefore be precluded from arguing or suggesting to the jury that that the Court disagreed with Apple or its

15

experts on these invalidity issues, or that Apple or its experts reached conclusions regarding anticipation and indefiniteness that were different from the ones adopted by the Court.

*Third*, WARF should not be permitted to refer to the Court's ruling that certain of Apple's claim construction and invalidity defenses were not "objectively reasonable." (Dkt. 193, at 44-45.) That ruling applies only to the question of whether Apple's actions were objectively willful, which this Court has recognized "is a question for the court, not the jury." (*Id.* at 41 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012)).) It has no bearing on the factual question regarding subjective willfulness that the jury could be asked to consider—although Apple requests that the Court grant its motion for summary judgment of no willfulness before any question of willfulness is presented to the jury. *See Bard*, 682 F.3d at 1006 (describing *Seagate*'s second prong as "a question of fact" that should only be decided after the court makes "a threshold determination of objective recklessness"); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). WARF should therefore be precluded from arguing or suggesting to the jury that that the Court disagreed with Apple or its experts on this objective willfulness issue, or that Apple or its experts reached conclusions regarding willfulness that were different from the ones adopted by the Court.

Each of these summary judgment rulings addressed legal issues that this Court or the *Intel* court decided as a matter of law; they are not relevant to the factual issues that the jury will be asked to consider at trial. Moreover, it would be extremely prejudicial to Apple—and likely misleading or confusing to the jury—if WARF were allowed to suggest to the jury that the Court disagreed with Apple or its experts. Accordingly, WARF should be precluded from referring to this Court's and the *Intel* court's summary judgment rulings. *See, e.g.*, *Clipco, Ltd. v. Ignite Design, LLC*, No. 04-cv-5043, 2005 WL 2861032 (N.D. Ill. Oct. 28, 2005) (granting motion *in*

*limine* to exclude references to Court's order granting summary judgment of infringement); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98-cv-3852, 2002 WL 1613724, at *1 (N.D. Ill. July 17, 2002) (issues determined in summary judgment have no purpose or place at trial); *Mi-Jack Products v. Int'l Union of Operating Engineers*, No. 94-cv-6676, 1995 WL 680214, at *2 (N.D. Ill. Nov. 14, 1995) ("The issues on which summary judgment was granted will not be before the jury.").[6]

V.    **Motion *In Limine* # 5:  WARF Should Be Precluded From Offering Evidence Or Argument Regarding The Patent Office's *Inter Partes* Review Proceedings For The '752 Patent.**

On September 30, 2014, Apple filed a petition with the Patent Office's Patent Trial and Appeal Board ("PTAB") seeking *inter partes* review ("IPR") of WARF's '752 patent.  Apple contended that the combination of two prior art references—U.S. Patent No. 5,666,506 ("Hesson") in view of U.S. Patent No. 5,619,662 ("Steely")—rendered the claims of the '752 patent obvious and therefore unpatentable.  On April 15, 2015, the PTAB denied Apple's petition, stating that Apple "has not shown, under 35 U.S.C. § 314(a), that there is a reasonable likelihood that it will prevail with respect to at least one of the challenged claims."  (Ex. 8, (4/15/15 Decision Denying Institution) at 2.)  On August 19, 2015, the PTAB denied Apple's request for rehearing.  (Ex. 9 (8/19/15 Decision Denying Petition For Rehearing) at 9.)  For the reasons stated below, WARF should be precluded from offering evidence or argument regarding the parallel IPR proceedings for the asserted '752 patent, including any reference to the PTAB's denial of Apple's IPR petition or request for rehearing.  Admission of such evidence or argument, which has minimal probative value to the questions before the jury, would be unfairly prejudicial to Apple and would mislead and confuse the jury.  It should be excluded under FRE 403.

---

[6]      Apple respectfully reserves the right to raise on appeal the rulings in the Court's summary judgment order that were adverse to Apple.

The PTAB's rulings are of minimal probative value to the jury's consideration of the '752 patent's validity.  In declining to institute IPR proceedings, the PTAB did not fully evaluate the validity of the '752 patent and did not conclude that the asserted claims are nonobvious.  The PTAB determined only that there was not "a reasonable likelihood that [Apple] [would] prevail" on its obviousness theory had it been allowed to proceed to an evidentiary hearing.  (Ex. 8 (4/15/15 Decision Denying Institution) at 2.)  The PTAB's decision therefore is not "a decision on the merits."  *InterDigital Commc'ns, Inc. v. Nokia Corp.*, No. 13-10-RGA, 2014 U.S. Dist. LEXIS 182856, at *1 (D. Del. Sept. 19, 2014) (observing that a patent examiner does not determine patentability of a claimed invention based upon whether "there is a reasonable likelihood that it is not obvious," but instead "has to come to a conclusion that it is not obvious, or not allow the issuance of the patent").  As this Court has acknowledged, it has no binding effect in this case.  (Dkt. 193, at 13-14 n.10 (summary judgment decision, stating that "the court agrees with Apple that [the *Intel* court's] decision has no binding effect on this court … any more than the PTAB's decision does"); *see also* 35 U.S.C. § 315(e) (estoppel arises only from a final decision after instituting an IPR); *Virginia Innovation Sciences, Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713, 764 (E.D. Va. May 2, 2014) ("decision by the PTO regarding whether to institute IPR certainly does not have binding effect on the Court"), *vacated on other grounds*, 2015 WL 35557000 (Fed. Cir. 2015).

The PTAB's decision declining to institute an IPR proceeding "is akin to a ruling on a preliminary injunction, where the merits are assessed with less than a full record and with less than a full adversarial proceeding."  *InterDigital*, 2014 U.S. Dist. LEXIS 182856, at *1.  The PTAB's decision was made based on a single round of briefing and a declaration from Apple's expert.  Except for a two-page reply on a discrete issue, Apple was not permitted to reply to

WARF's response and there was no evidentiary hearing.  Nor did the PTAB consider the full scope of the prior art, or additional anticipation and obviousness theories, that Apple may present at trial.  By contrast, the jury should be permitted to reach its own independent conclusion regarding whether the asserted claims of the '752 patent are valid or invalid—after hearing the complete evidence and testimony presented by both parties, including cross-examination.

Permitting WARF to tell the jury about the PTAB's rulings declining to institute an IPR proceeding would cause substantial prejudice to Apple.  It would unfairly suggest to the jury that the Patent Office has "twice blessed" the validity of the '752 patent, although it has not. Admitting the PTAB's rulings would also improperly suggest that Apple cannot meet its burden of proving invalidity or that Apple must satisfy a heightened burden beyond clear and convincing evidence—neither of which is true.  Moreover, permitting the PTAB rulings to be introduced at trial would require additional time so that Apple could explain the differences between IPR proceedings and the present case and put the PTAB's rulings in context, thus unduly lengthening the trial and wasting time.  This type of "trial within a trial" would add unnecessary complexity to an already complex case and would increase the likelihood of confusing the jury.  *See, e.g.*, *InterDigital*, 2014 U.S. Dist. LEXIS 182856, at *1; *see also IA Labs, CA LLC v. Nintendo Co.*, 857 F. Supp. 2d 550, 552 (D. Md. 2012) ("Delving into the details of the reexamination proceedings and providing the necessary context of the PTO structure and process would inevitably 'waste time and distract from the key issues in the lawsuit.'" (citation omitted)).

Nor would excluding the PTAB's rulings bias the trial in any way.  For example, Apple does not intend to suggest to the jury that the Patent Office has not considered the Hesson and Steely prior art references.  *See, e.g.*, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 13-CV-213-JRG, 2015 U.S. Dist. LEXIS 20306, at *19 (E.D. Tex. Jan. 31, 2015) (granting

motion *in limine* to exclude evidence of the PTAB's denial of the defendant's IPR petitions, as long as the defendant did not suggest to the jury that the prior art references had not been considered by the Patent Office). Similarly, Apple would not object to the parties using statements made before the PTAB for impeachment purposes at trial—as long as it is done without referencing the IPR proceeding or the PTAB's rulings.[7] *See, e.g.*, *Personalized User Model, L.L.P. v. Google, Inc.*, No. 9-525-LPS, 2014 U.S. Dist. LEXIS 25356, at *9-10 (D. Del. Feb. 27, 2014) ("[T]he probative value of the reexamination evidence is substantially outweighed by the risk of unfair prejudice and the risk of confusing the jury. The parties may request the opportunity to use as evidence statements made or evidence proffered during the reexaminations so long as this is done without referencing either the reexamination or the rejections.").

On balance, the minimal probative value of the PTAB's rulings is substantially outweighed by the prejudice that Apple would suffer and the heightened risk of juror confusion if WARF were permitted to tell the jury about the PTAB's rulings. The PTAB's rulings should accordingly be excluded from trial pursuant to FRE 403. *See, e.g.*, *InterDigital*, 2014 U.S. Dist. LEXIS 182856, at *1 ("[T]he PTAB's actions in relation to the '151 patent are of marginal relevance, and the probative value is greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence. Further, because of the complexity involved in giving the full context, there would also be a significant risk of confusion of the issues. Thus, I exclude the '151 IPR denial under Rule 403."); *Ultratec, Inc. v. Sorensen Commc'ns, Inc.*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 145956, at *8 (W.D. Wis. Oct. 8, 2014) (Crabb, J.) ("[B]ecause of the different standards, procedures and presumptions applicable to IPR proceedings, ***evidence concerning the [IPR] proceedings is***

---

[7]      For example, each party submitted a brief with exhibits and Apple submitted a declaration from Dr. Robert Colwell, who is also Apple's invalidity expert for trial.

*irrelevant and highly prejudicial to the jury's determination of the validity of the patents*.  For this same reason, defendants may not rely on evidence of the IPR proceedings during the damages phase to argue that the patents are entitled to diminished value." (emphasis added)).[8]

## VI.   Motion *in Limine* # 6:  WARF's Validity Expert, Dr. Trevor Mudge, Should Be Precluded From Testifying About The Patent Office's IPR Rulings.

Apple has filed a separate motion *in limine* seeking to preclude WARF from presenting evidence or argument regarding the PTAB's rulings denying Apple's request for *inter partes* review of the '752 patent.  *See supra* pp. 17-21.  Apple also moves to preclude WARF's validity expert, Dr. Trevor Mudge, from offering any testimony at trial on this subject for the additional reason that he failed to timely disclose any opinions regarding the PTAB's rulings during expert discovery.

Dr. Mudge submitted his rebuttal report regarding validity on March 12, 2015.  The PTAB denied Apple's IPR petition on April 15, 2015.  On July 26, 2015—more than ***three months*** after the PTAB's decision and just ***five days*** before Dr. Mudge's scheduled deposition on July 31, 2015—WARF served a supplemental report from Dr. Mudge; that report did not discuss the PTAB's IPR decision.  (*See* Dkt. 270.)  On July 29, 2015—just ***two days*** before Dr. Mudge's scheduled deposition—WARF's counsel submitted a "corrected" supplemental report for Dr. Mudge; again, that report did not discuss the IPR decision.  (Dkt. 267.)  With the supplemental report, WARF's counsel claimed that "[t]he originally served [supplemental]

---

[8]      Courts have also excluded evidence and testimony concerning the Patent Office's denial of reexamination proceedings (as opposed to IPR proceedings) on similar grounds. *See, e.g.*, *L-3 Commc'ns Corp. v. Sony Corp.*, No. 10-734-RGA, 2013 WL 5799842, at *1 (D. Del. Oct. 25, 2013) (excluding defendant's reexamination request under FRE 403 as unfairly prejudicial and not probative); *Smith & Nephew, Inc. v. Interlace Med., Inc.*, Nos. 10-10951-RWZ, 11-12064-RWZ, 2012 WL 3560811, at *2 (D. Mass. Aug. 17, 2012) (granting defendant's motion *in limine* to preclude reference to the denied reexamination request for the patent because "[t]he reexamination results are not relevant evidence").

report accidentally left off from the materials considered list the Board's Decision Denying Institution of IPR2014-1567" and stated that "Professor Mudge will be discussing the PTAB decision in his testimony."  (Ex. 10 (07/29/15 E-mail from Zhong).)

The next day—just **one day** before Dr. Mudge's scheduled deposition—WARF's counsel emailed Apple's counsel to say that Dr. Mudge was "not feeling well" and suddenly canceled his deposition.  (Ex. 11 (07/30/15 E-mail from Sheasby) (claiming "[t]here is something going around that is very bad" and "[i]n light of this we are going to need to cancel tomorrow").)  The parties eventually agreed to reschedule the deposition for September 3, 2015, after the close of discovery.[9]  On August 10, 2015—nearly four months after the PTAB's decision, ten days **after** Dr. Mudge's deposition was supposed to occur, and just eleven days before the close of discovery—WARF submitted a "second supplemental" report for Dr. Mudge.  In this report, Dr. Mudge discussed the PTAB's IPR decision for the first time.  (Ex. 13 (Hawkinson/Zhong Email) After Apple asked WARF to withdraw the report due to its untimeliness, WARF eventually withdrew Dr. Mudge's second supplemental report.  (Ex. 14 (8/25/15 Zhong/Danford Email).)

In addition to excluding the PTAB's IPR rulings for the reasons discussed in Motion *in Limine* # 5 above, the Court should also preclude Dr. Mudge from discussing the IPR decision at trial because he failed to disclose his opinions regarding it in a timely manner.  Dr. Mudge waited nearly **four months** after the PTAB's ruling to discuss it in an expert report—at a time

---

[9]       Contrary to WARF's suggestion in its motion to strike, Dr. Mudge's deposition was not rescheduled "at Apple's request."  (Dkt. 214, at 16.)  After WARF canceled the deposition at the last minute, Apple sought to reschedule it for the next week.  (Ex. 12 (Sheasby/Lee E-mails).) WARF declined, stating that Dr. Mudge would be in the U.K. then.  (*Id.*)  WARF also proposed two dates during the last week of discovery when Apple could not take the deposition due to other depositions in the case that were previously scheduled to take place on the opposite coast. (Ex. 12.)  Ultimately, the parties rescheduled the deposition for September 3, 2015.  Pursuant to the parties' stipulation, Apple may file additional pretrial motions regarding Dr. Mudge after his deposition.  (Dkt. 194.)

that was ten days *after* his originally scheduled deposition and just eleven days before the close

of discovery—and WARF has now withdrawn that report.  Thus, there is no expert report from

Dr. Mudge that discusses the IPR rulings.

Moreover, Apple would surely be harmed by Dr. Mudge's reliance on new opinions after

Apple's experts have already provided their opinions and while Apple has been busy completing

fact and expert discovery and preparing for trial.  *See* Fed. R. Civ. P. 37(c) ("If a party fails to

provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is harmless.").  As this Court recently

explained in this case, "Rule 37 is designed to 'prevent a party from springing new expert

testimony on an opponent at the last minute.'"  (Dkt. 225, at 2 (quoting *Dura Automotive Sys. of

Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 621 (7th Cir. 2002)).)  Accordingly, Dr. Mudge should

be precluded from providing any testimony regarding the PTAB's IPR rulings at trial.

## VII.   Motion *In Limine* # 7:  WARF Should Be Precluded From Offering Evidence Or Argument Regarding Apple's Future Products.

The Apple products accused of infringement in this case are those products that contain

an A7, A8, or A8X system on a chip ("SoC").  These products are:  iPhone 5s, iPhone 6, iPhone

6 Plus, iPad mini 2, iPad mini 3, iPad Air, and iPad Air 2.  The Court denied WARF's request

for discovery on any of Apple's future products, and ruled that only Apple's A7 and A8 products

would be at issue "for trial and discovery."  (Dkt. 72 (10/31/2014 Hrg. Tr.) at 31:19-21 (The

Court:  "I'm going to stick with the A7, A8 distinction for trial and discovery …."); *see also* Dkt.

71 (order denying WARF's motion to compel).)  Accordingly, WARF should be precluded from

offering any evidence or argument regarding Apple's future products pursuant to the Court's

order and also under FRE 402 and FRE 403.

Despite the Court's clear ruling, WARF has indicated during discovery that it may improperly seek to raise the issue of Apple's future products at trial.  For example, WARF's counsel attempted to coerce one of Apple's engineers into revealing information regarding Apple's future products during his deposition with the following question: █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ (Dkt. 87 (Bannon Dep.) at 312:17-313:14.)  Similarly, WARF's infringement expert Dr. Thomas Conte stated the following in his damages expert report:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

(Dkt. 212 (Conte Damages Report) ¶ 282; *see also id.* ¶ 283 █████████████

██████████████████████████████████████)

If permitted before the jury, WARF's insinuations regarding Apple's future products would be extremely prejudicial to Apple.  Apple's future products were excluded from discovery and trial.  Any attempt by WARF to circumvent the Court's ruling would introduce irrelevant facts that would likely confuse the jury, and could unfairly suggest to the jury that Apple has acted improperly—when it has not.  The trial record should be limited to Apple's A7, A8, and A8X (and earlier) products, and WARF should be precluded from introducing any evidence or argument regarding Apple's future products.

## VIII.  Motion *In Limine* # 8:  WARF Should Be Precluded From Offering Evidence Or Argument Suggesting That Apple "Copied" Or "Stole" WARF's Alleged Invention.

WARF has alleged that Apple "copied" the '752 patent during its design of the accused chips.  Yet there is no evidence that the Apple engineers who designed the accused chips were

even aware of the '752 patent while developing the accused feature, let alone that they copied their design from WARF.  Indeed, WARF's allegation of copying is contrary to the development timeline for Apple's accused LSD Predictor, which was already complete and on the market before anyone involved learned of the '752 patent.  Given the highly prejudicial nature of the allegation, WARF should not be permitted to suggest that Apple copied based on speculation and conjecture.  *See Caluori v. One World Techs., Inc.*, No. 07-cv-2035, 2012 WL 2004173, at *2 (C.D. Cal. June 4, 2012) ("[B]ecause plaintiff has set forth no evidence that defendant was aware of the '727 patent or its commercial embodiment at the time it developed its accused device, the Court agrees with defendant that references to copying of the revised BladePoint device should not be permitted."); *Eolas Techs., Inc. v. Microsoft Corp.*, 270 F. Supp. 2d 997, 1005 (N.D. Ill. 2003) (excluding evidence and argument of copying in light of "the highly prejudicial nature" of that evidence and its minimal probative value).  Pursuant to FRE 402 and FRE 403, WARF should be precluded from offering evidence or argument suggesting that Apple "copied" or "stole" WARF's alleged invention.

During the entire design process (and even after the first products containing Apple's accused LSD predictor came to market), Apple's engineers were unaware of the '752 patent and its named inventors' work, as they confirmed in their deposition testimony:





████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

  Undeterred by the lack of any actual facts indicating that Apple copied, WARF and its experts have attempted to manufacture support from their copying allegations in several ways. None of those theories, however, supports a claim that Apple copied.  It would be highly prejudicial to Apple to permit WARF to accuse Apple of copying under any of those theories.

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



In addition to describing DEC's "store sets" approach, the Chrysos and Emer paper briefly mentions the memory dependence prediction work that others in the field had done, including the Hesson prior art patent, the Steely prior art patent, a publication from the named inventors of the '752 patent, and the work by several others in the field. (Dkt. 143-1 at APL-WARF_0000004118-119.)

Moreover, the Chrysos and Emer paper does not cite or discuss the '752 patent. It describes a paper published by the named inventors *after* filing the '752 patent. The single paragraph describing that paper is at such a high level of generality that it does not disclose the elements claimed in the '752 patent:

> Independently, Moshovos *et al.* [5] published a comprehensive description of memory dependence prediction. This is the first published work identifying that memory dependencies are problematic for out-of-order machines. They also discovered that it is important to delay dependent loads, but only as long as

> necessary to avoid memory order violations and not impose false dependencies.
> They proposed a mechanism to avoid memory-order violations; a pair of fully
> associative structures that hold store load pairs that have caused memory-order
> violations in the past. These structures direct the order of execution for
> subsequent instances of the instructions.

(Dkt. 143-1 at APL-WARF_0000004119.) Merely reading a paper written by a third party that describes the named inventors' work in general terms is far too attenuated a connection to permit WARF to argue copying.

*Second*, WARF argues that the fact that the '752 patent is supposedly "widely known in the computer architecture world" suggests that Apple copied. (Dkt. 105 [Conte Report] ¶ 1123.) That argument, however, ignores the testimony from Apple's engineers discussed above that they were unaware of the '752 patent and its named inventors' work. If Apple's engineers did not know about WARF's work, they could not have copied, regardless of how supposedly well-known that work is in the field generally. ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████

*Third*, WARF contends that the fact that Apple's accused LSD Predictor is ██████████

███████████████████████████████████████████████████████████

█████████████████████████████ suggests that Apple copied. (Dkt. 105 (Conte Infringement Report) ¶ 1107.) Apple disputes that characterization and believes that there are significant differences between Apple's LSD Predictor and the '752 patent. But in any case, WARF's argument conflates Apple's alleged infringement with evidence of copying. Evidence of infringement is not evidence of copying—otherwise, every case of infringement would support a

finding of copying.  *See, e.g.*, *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) ("[Copying] is of no import on the question of whether the claims of an issued patent are infringed."); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997) ("[I]ntent plays no role in the application of infringement.").  WARF's attempt to rely on Apple's alleged infringement as evidence of copying is contrary to law.

  **Fourth**, WARF relies on the fact that "[t]he '752 Patent was identified as prior art to or by Apple (or its predecessor in interest) on approximately 30 occasions" during the prosecution of various patent applications as evidence that Apple copied.  (Dkt. 105 (Conte Infringement Report) ¶ 1124.) ██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████

  Because WARF cannot point to any plausible evidence supporting its copying claim, and because reference to alleged copying would be highly prejudicial to Apple, WARF should be prohibited from suggesting to the jury that Apple copied the '752 patent or its named inventors' work.

## IX. Motion *In Limine* # 9:  WARF Should Be Precluded From Offering Evidence Or Argument For Secondary Considerations That Are Not Tied To The '752 Patent.

  Assessing obviousness requires consideration of evidence of secondary considerations, such as praise for the claimed invention or commercial success.  However, generalized or non-

specific evidence of secondary considerations is irrelevant to the obviousness analysis.  Rather, there must be a "nexus between the merits of the claimed invention" and the evidence of secondary considerations.  *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327-28 (Fed. Cir. 2008) (no nexus established where the praise was for the patented device but was not tied to the "scope of the claims"); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) (secondary considerations of non-obviousness are "only significant" if there is a nexus to "the claimed invention").  If the patentee only shows "some relationship" between the asserted patent claims and the evidence of non-obviousness, then it has failed to show the required nexus for such evidence to be admitted.  *See Honeywell Int'l v. Nikon Corp.*, 2009 WL 577274, at *2 (D. Del. Mar. 4, 2009) (granting motion *in limine* to exclude licenses as evidence of the patent's commercial success, where the patentee had only shown "some relationship" between the licenses and the asserted patent claim).

Consistent with those principles, Judge Crabb precluded WARF in the *Intel* case from offering generalized proof of secondary considerations.  *See WARF v. Intel Corp.*, No. 08-cv-78-bbc, Dkt. 442, at 7 (W.D. Wis. Sept. 24, 2009) (granting motion *in limine* to preclude "documents containing only general praise for inventors, documents praising the load/store feature described in the invention and statements describing defendant's apparent infringement rather than praising the invention").  Nevertheless, WARF now seeks to offer the same evidence of secondary considerations lacking a nexus to the claimed invention that Judge Crabb previously excluded.  (*See* Ex. 122 (WARF's Response to Interrogatory No. 16) at 60-67; Dkt. 107 (Mudge Report) ¶¶ 638-711.)   The Court should preclude WARF from offering that evidence again here under FRE 402 and FRE 403.  The improper evidence of secondary considerations that WARF seeks to offer falls into four categories.

*First*, WARF seeks to offer alleged "praise" documents that are not actually praise for anything, let alone praise for the claimed invention of the '752 patent.  (Exs. 15 to 53.)  For example, Ex. 15 is an excerpt from a 900-page computer architecture textbook with a single citation to a paper written by Dr. Moshovos.  The book simply states that "Moshovos and Sohi [1997] … focus on predicting memory dependences and using this information to eliminate the dependence through memory," without touting or even discussing the claimed invention of the '752 patent.  (Ex. 15 at WARF0002063.)  Similarly, WARF cites as evidence of praise an Intel patent that discusses the concepts of data dependence and prediction generally, but contains no reference whatsoever to the '752 patent or its named inventors' work.  (Ex. 17 at WARF0072684.)  WARF offers other documents that are academic course syllabi indicating that papers written by the named inventors would be discussed in class, but again without mention of the claimed invention.  (*E.g.*, Exs. 18-25.)  And WARF cites as evidence of praise other academic and industry publications that do little more than restate the general subject matter of the named inventors' work on data dependence prediction, without offering praise for the work, let alone the claimed invention:

- "Research has shown that dependence relationship between static load and store instructions shows predictability" (Ex. 49 at WARF0073100);

- "Because forwarding behavior is stable and because the static set of forwarding stores and loads is small—these phenomena are well known and are exploited by other techniques like intelligent load speculation [13, 6]" (Ex. 45 at WARF0074848);

- "The Multiscalar group has observed that blind speculation on all data dependencies can severely impact performance when the speculation is wrong and

33

that dynamic data dependence prediction techniques can be used to improve performance over blind speculation [13]" (Ex. 44 at WARF0074434).

In addition, WARF has cited at least one publication authored by Dr. Moshovos himself as alleged evidence of praise. (Ex. 16 at WARF0074939 (book chapter entitled "Exploiting Load/Store Parallelism via Memory Dependence Prediction").) That hardly constitutes the type of objective, third-party praise that would relevant to the question of obviousness. *George M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) (distinguishing between relevant industry praise and "self-serving statements" from the patentee).

It would be misleading and unfairly prejudicial to Apple to permit WARF to cast any these documents as relevant evidence of "praise" for the claimed invention. The Court should preclude WARF from offering these materials under FRE 402 and FRE 403.

**Second**, WARF seeks to offer numerous documents that consist of praise for the named inventors' work generally, but do not discuss their work on memory dependence prediction. (Exs. 54-60.) ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Such generalized praise lacks a nexus to the claims of the '752 patent and is precisely the type of "general praise for inventors" that Judge Crabb previously excluded. *Intel*, No. 08-cv-78-bbc, Dkt. 442, at 7.

**Third**, WARF seeks to offer documents that praise the named inventors' work on memory dependence prediction generally, but do not identify any particular aspect of that work that corresponds with the claimed invention of the '752 patent. (Exs. 61-92.) That distinction is

important because, as the named inventors have acknowledged, their work on memory dependence prediction is much broader than the '752 patent and spans many years both before and after the '752 patent was filed. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

    Accordingly, praise for the named inventors' work in this area generally is not indicative of praise for the '752 patent because it encompasses unclaimed elements of their work on memory dependence prediction. *Muniauction*, 532 F.3d at 1328 (no nexus where praise relates to unclaimed elements); *Ormco*, 43 F.3d at 1312 (same). WARF nevertheless cites several documents as evidence of praise that relate generally to the named inventors' broader work in this area without specifically addressing any of the patented features. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████Other examples similarly provide only generalized praise of the named inventors' work, such as:

- Dr. Moshovos' receipt of the 2010 Maurice Wilkes award for his "foundational contributions to the area of memory dependence prediction" (Ex. 122 (WARF's Response to Interrogatory No. 16) at 60-61, which includes papers published after the filing date of the '752 patent; and

- Dr. Sohi's receipt of the 2011 Eckert-Mauchly Award "[f]or pioneering widely used micro-architectural techniques for instruction-level parallelism" (Exs. 77, 87), which includes many aspects outside the scope of the '752 patent claims.

Because these documents relate to a body of work that is much broader than the '752 patent, they should be excluded as evidence of relevant praise. *Muniauction*, 532 F.3d at 1328; *Ormco*, 43 F.3d at 1312.

**Fourth**, WARF seeks to rely on evidence of the commercial success of Apple's accused products as evidence of secondary considerations.[10] (Exs. 93-121.) But WARF ignores that, to be relevant evidence to the obviousness analysis, it must first show that sales of Apple's products are a "direct result" of the '752 patent as opposed to "other economic and commercial factors." *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996). WARF cannot prove that here. Indeed, WARF's experts concede that the accused LSD Predictor does not drive demand for Apple's products. (Dkt. 243 (Lawton Report) ¶ 404 ("[B]ecause the '752 Patent does not account for all of the performance improvement in Cyclone and there are numerous other features, it cannot be said that the '752 Patent is "*the basis*" of demand for the smartphone and tablet devices in which the processor is a component part."), ¶ 407 ("[I]t is my opinion that the Entire Market Value Rule Exceptoin does not apply . . . .").) WARF also has not identified a single instance where Apple has marketed the LSD Predictor to its customers.

In addition, before relying on the commercial success of Apple's accused products as evidence of secondary considerations, it is WARF's burden to show that the success of Apple's products is not attributable to its use of prior art features. *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed.Cir.1983) (rejecting evidence of commercial success where the patentee

---

[10]     Apple disputes that its products include the invention claimed in the '752 patent.

"failed to show that such commercial success ... was due to anything disclosed in the patent in suit which was not readily available in the prior art").  Again, WARF has made no attempt to make that requisite showing here.  Because WARF cannot establish a nexus between the commercial success of Apple's products and the accused feature, WARF should not be permitted to present evidence or argument that the commercial success of Apple's products is evidence of secondary considerations of non-obviousness for the '752 patent.

## X.    Motion *In Limine* # 10:  WARF Should Be Precluded From Offering Evidence Or Argument Regarding Infringement Under The Doctrine Of Equivalents For Certain Claim Elements.

WARF bears the burden of proving infringement, either literally or under the doctrine of equivalents, by a preponderance of the evidence.  *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).  To prove infringement under the doctrine of equivalents, WARF must demonstrate that any differences between the asserted claims and the accused devices are "insubstantial."  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).  Insubstantiality may be determined by whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation.  *See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).  Regardless how the equivalence test is articulated, "the doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

To prove infringement by equivalents, a patentee must provide "particularized testimony and linking argument" on an element-by-element basis.  *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009).  "[E]vidence and argument on the doctrine of

equivalents cannot merely be subsumed in [the patentee's] case of literal infringement." *Id.* (quoting *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989)).  An expert's failure to provide particularized testimony deprives the jury of "the proper evidentiary foundation from which it may permissibly conclude that a claim limitation has been met by an equivalent." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1188 (Fed. Cir. 1998); *see also Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (testimony insufficient where "there [was] no discussion of whether or how the way the die pad operates [was] similar to the patent claim, nor [was] there any particularized testimony explaining *why* the function and result [were] the same" (emphasis and alterations in original)).

WARF's infringement expert, Dr. Thomas Conte, has failed to disclose legally sufficient opinions regarding the doctrine of equivalents for at least two disputed claim elements.  In his infringement expert report dated February 2, 2015—which spans ***582 pages*** plus exhibits—Dr. Conte offered the opinion that Apple's products literally infringe the asserted claims of the '752 patent.  He devoted only a single conclusory paragraph to the doctrine of equivalents for most disputed claim elements, and he disclosed ***no opinion*** regarding equivalents for one disputed claim element ("synchronization table").  Instead, although it is ***WARF's*** burden to prove infringement under the doctrine of equivalents, Dr. Conte took the position that "[o]nce Apple provides an explanation I will respond by analyzing both under literal infringement and the doctrine of equivalents."  (Dkt. 105 (Conte Infringement Report) ¶ 1054.)

But even in Dr. Conte's supplemental expert report—which WARF served on August 2, 2015, nearly ***five months*** after the non-infringement report of Apple's expert Dr. David

August,[11] and just *five days* before Dr. Conte's deposition—Dr. Conte provided no further analysis regarding the doctrine of equivalents. (*See* Dkt. 216.)  Dr. Conte likewise did not elaborate on any theory of infringement under the doctrine of equivalents at his deposition. (*See* Dkt. 253.)

For these reasons, and as explained in more detail below, WARF should be precluded from presenting at trial any evidence or argument regarding infringement under the doctrine of equivalents for certain claim elements.

### A.   Dr. Conte Has Disclosed *No Opinion* That Apple's Products Satisfy The "Synchronization Table" Claim Element Under The Doctrine Of Equivalents.

Claims 5 and 6 of the '752 patent require a "synchronization table."  ('752 patent, at 15:8-9.)  Dr. Conte has provided *no opinion* that Apple's accused products satisfy this claim element under the doctrine of equivalents.  (*See* Dkt. 105 (Conte Infringement Report) ¶ 895 ("It is my opinion that the Accused Processors literally practice Claim [5.2]."); *see also id.* ¶¶ 895-918 (providing only a literal infringement opinion for the "synchronization table" claim element in his 582-page infringement report); *id.* ¶¶ 1015-1054 (briefly addressing the doctrine of equivalents for some claim elements but not for the "synchronization table" element); *id.* ¶¶ 1053-1054 (stating, with respect to "synchronization table" and several other claim elements: "I believe that the Accused Processors literally meet these limitations.  Moreover, Apple does not explain why these limitations are not met.  Once Apple provides an explanation I will respond by analyzing both under literal infringement and the doctrine of equivalents.").)

---

[11]   In his rebuttal expert report, Apple's expert Dr. August pointed out that Dr. Conte addressed the doctrine of equivalents in only a single paragraph for most claim elements and that Dr. Conte provided virtually no analysis or explanation for his conclusory opinions. (*See, e.g.*, Dkt. 103 (August Non-Infringement Report) ¶ 263.)  Additionally, Dr. August provided detailed explanations for why Apple's products do not infringe under the doctrine of equivalents on an element-by-element basis. (*E.g.*, *id.* ¶¶ 263-278.)

Even after Dr. August provided a detailed report explaining his opinion that Apple's products do not satisfy the "synchronization table" element either literally or by equivalents (Dkt. 103 (August Non-Infringement Report) ¶¶ 329-364), Dr. Conte still did not disclose *any* analysis for this claim element under either the "insubstantial differences" test or the "function-way-result" test. He provided no such opinion in his opening expert report regarding infringement, in his supplemental expert report served *five months* after the rebuttal expert report of Apple's expert, or at his deposition just two weeks before the close of discovery.

Pursuant to FRCP 37, Dr. Conte should therefore be precluded from offering at trial any opinion that Apple's accused products satisfy the "synchronization table" element under the doctrine of equivalents. Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see Huntco Supply, LLC v. Starlite Media, LLC*, No. 07-cv-401, 2009 WL 1108659, at *5-6 (D. Ore. Apr. 21, 2009) (excluding as untimely supplemental expert report containing additional opinions relating to the doctrine of equivalents not disclosed in expert's opening report); *TNS Media Research LLC v. TiVo Research & Analytics, Inc.*, No. 11-cv-4039, 2014 WL 5639930, at *6 (S.D.N.Y. Nov. 4, 2014) (excluding supplemental declaration regarding infringement under the doctrine of equivalents as untimely because "conclusory statements about the doctrine of equivalents" in expert's initial report were not sufficient disclosure of infringement theory). And without supporting testimony from its expert, WARF should be precluded from arguing that Apple's accused products satisfy the "synchronization table" element under the doctrine of equivalents. *See, e.g.*, *Amgen*, 580 F.3d at 1382 (requiring "particularized testimony and linking argument" on an element-by-element basis

to prove infringement by equivalents); *id.* ("[E]vidence and argument on the doctrine of equivalents cannot merely be subsumed in [the patentee's] case of literal infringement." (citation omitted)).

    **B.**    **Dr. Conte Has Disclosed No Legally Sufficient Opinion That Apple's Products Satisfy The "Predetermined Range" Claim Element Under The Doctrine Of Equivalents.**

Asserted claims 1, 2, 3, 5, and 6 of the '752 patent require "a prediction threshold detector preventing data speculation for instructions having a prediction within a predetermined range." The totality of Dr. Conte's disclosed opinion regarding the doctrine of equivalents for this claim element is:



(Dkt. 105 (Conte Infringement Report) ¶ 1045.) Dr. Conte provided no further elaboration in his supplemental expert report or at his deposition.

Buried within the 582 pages of his report, Dr. Conte's single paragraph regarding equivalents for this claim element does little more than recite the boilerplate "insubstantially different" language and perfunctorily identify a "function, way, and result." But Dr. Conte has not tied those differences or the function, way, and result to both the claim element in the '752

patent and the accused feature in Apple's products.  Nor has he provided any explanation for *why* or ***how*** the claim element in the '752 patent and the alleged equivalent in Apple's products are insubstantially different or perform substantially the same function, way, and result.  This conclusory opinion is far from the "particularized testimony and linking argument" that WARF is required to demonstrate to prove infringement under the doctrine of equivalents.  *Amgen*, 580 F.3d at 1382; *see also Texas Instruments*, 90 F.3d at 1568 (testimony insufficient where "there [was] no discussion of whether or how the way the die pad operates [was] similar to the patent claim, nor [was] there any particularized testimony explaining ***why*** the function and result [were] the same" (emphasis and alterations in original)).

Dr. Conte should be held to the opinions that he disclosed during discovery and should not be permitted to develop new theories or explanations for trial.  *See* Fed. R. Civ. P. 26(a), 37(c).  His failure to disclose particularized opinions leaves WARF far short of being able to provide "the proper evidentiary foundation from which [a jury] may permissibly conclude that a claim limitation has been met by an equivalent."  *Comark Commc'ns*, 156 F.3d at 1188.  WARF should therefore be precluded from offering evidence or argument that Apple's accused products satisfy the claim element requiring "a prediction threshold detector preventing data speculation for instructions having a prediction within a predetermined range" under the doctrine of equivalents.[12]

---

[12]     Apple does not believe that ***any*** of WARF's arguments for infringement under the doctrine of equivalents are correct or legally sufficient.  However, Apple is moving with respect to only these two claim elements at this time, because they are so poorly developed (or simply not disclosed) that allowing WARF to present new arguments at trial would unfairly prejudice Apple.  Apple reserves the right to move on the sufficiency of WARF's other equivalents arguments based on the evidence that WARF presents at trial.

XI.     **Motion *In Limine* # 11:  WARF Should Be Precluded From Offering Testimony From Its Patent Law Expert, Stephen Kunin.**

Apple relies on U.S. Patent No. 5,619,662 to Steely, et al. ("the Steely patent") as prior art that invalidates WARF's '752 patent.  During discovery, the parties disputed whether the Steely patent was before the original examiner during prosecution of the '752 patent.  In support of its position that the Steely patent was before the original examiner, WARF relies on a patent law expert, Stephen Kunin, who offers an opinion on the single issue of whether the original examiner considered the Steely patent during prosecution of the '752 patent based on patent policy and procedure.  (*See* Dkt. 263 (Kunin Report).)  Apple does not intend to dispute at trial whether the Steely patent was before the original examiner (or whether the original examiner considered the Steely patent) during prosecution.  Accordingly, the only issue on which Mr. Kunin offers an opinion is no longer in dispute.  Mr. Kunin's testimony is therefore irrelevant to any issue for the jury to decide and should be excluded from trial.  *See* FRE 402.

Further, even if there were a dispute—and now there is not—courts have made clear that, to the extent a patent law expert is permitted to testify at trial, such testimony should be limited to matters of Patent Office practice and procedure.  Testimony that goes beyond that—into technical matters, legal issues, or fact questions about which the experts have no personal knowledge—is inappropriate.  *See, e.g., Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986) (affirming the exclusion of the testimony of a patent law expert where the witness "would testify generally about patent law with respect to its application to this case"); *Minn. Mining & Mfg. Co. v. Appleton Papers Inc.*, 50 U.S.P.Q.2d 1636, 1638 (D. Minn. 1998) (holding that "[a]ny testimony by [the patent law expert] must ... be limited to an objective explanation of the patent application process, and the sequence of events that led to the [patent-in-suit]" and refusing to allow the expert "to testify concerning the limitations of the USPTO, or

43

to offer any opinion concerning the effectiveness of the USPTO examination in this case"); *Wis. Alumni Research Foundation v. Intel Corp.*, C.A. No. 08-cv-00078-bbc, Dkt. 442 (Order) at 5 (granting Intel's motion *in limine* to exclude testimony of patent law experts).

To the extent WARF intends to introduce testimony from Mr. Kunin, it is undisputed that Mr. Kunin has no personal knowledge of the prosecution of the '752 patent or Examiner Lim. (*See* Dkt. 256 (Kunin Dep.) at 66 ("Q. Have you spoken with Examiner Lim about the prosecution of the '752 patent?  A. I have not.").)  Yet Mr. Kunin's expert report offers speculation concerning the training of Examiner Lim and his examination of the '752 patent. (*See, e.g.*, Dkt. 263 (Kunin Report) ¶ 43 ("Examiner Lim would have been trained to take the following steps with the fifth USPAT query[.]"); *id.* ¶ 50 ("There is documentary evidence in the prosecution history indicating that Examiner Lim complied with his training in this instance."); *id.* ¶ 51 ("A supervisory patent examiner reviewing this file history to determine whether Examiner Lim complied with his patent examining functions quality element in his performance appraisal plan would conclude that Examiner Lim did so in this case.").)  Such testimony goes well beyond Mr. Kunin's personal knowledge and expertise, and well beyond the proper scope for a patent law expert.  It should be excluded from trial.

XII.    **Motion *In Limine* # 12:  WARF Should Be Precluded From Offering Evidence Or Argument On the Subjective Prong Of The Willfulness Test Based On Any Evidence Other Than Knowledge Of The Patent By A Person Involved In The Allegedly Infringing Activity.[13]**

To willfully infringe a patent, "the patent must exist and one must have knowledge of it." *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).  There is no evidence that any Apple engineer or other person responsible for designing the accused LSD

---

[13]    This Motion *In Limine* #12 pertains to the willfulness phase of trial, as to which Apple has requested bifurcation into a second phase, following a consolidated liability and damages first phase of trial.  See Apple's Motion *In Limine* #21.

Predictor knew of the '752 patent (or the patent application that led to it) during development of the LSD Predictor.  Nonetheless, WARF has made clear that it intends to introduce evidence that: (1) the engineers designing the LSD Predictor were aware of articles describing the work of the inventors of the '752 patent, and there was press coverage of a lawsuit between WARF and Intel; (2) Apple-assigned patents unrelated to the accused products reference the '752 patent as prior art; and (3) in 2008 WARF emailed Apple stating only that WARF has "a patented technology … that may be of interest to Apple."  (*See* Dkt. 105 (Conte Infringement Report) ¶¶ 1107, 1109-1121, 1123; Ex. 123 (WARF's Fourth Supplemental Objections and Responses to Interrogatories Nos. 1-9) at 47; Ex. 124 (WARF's Third Supplemental Objections and Responses to Interrogatories No. 10-14) at 17.)  None of that evidence shows that any relevant person at Apple had knowledge of the '752 patent.  For that reason, admission of that evidence and argument, which is not probative of the factual issues that the jury will be asked to decide under the subjective prong of the willfulness test, would be unfairly prejudicial to Apple and would mislead and confuse the jury.  This evidence and argument should therefore be excluded under FRE 402 and FRE 403.

### A. The Academic Articles And Other Public Information About The Inventors' Work Did Not Provide Knowledge Of The '752 Patent.

WARF  relies on:  (1) a paper by George Chrysos and Joel Emer, titled "Memory Dependence Prediction Using Store Sets," from the 1998 International Symposium on Computer Architecture ("ISCA") (the "Chrysos & Emer Paper") (Dkt. 105 (Conte Infringement Report) ¶¶ 1107, 1109, 1113)[14]; (2) the alleged "fame" in the computer architecture world of the research that led to the '752 patent, including a paper by the named inventors, titled "Dynamic Speculation and Synchronization of Data Dependence," from ISCA 1997 (the "ISCA 1997

---

[14]     Apple has filed a separate *Daubert* motion to preclude Dr. Conte from testifying about subjective willfulness.

Paper") (*id.* ¶¶ 1107, 1110, 1115, 1123); and (3) the "widely publicized litigation with Intel regarding the '752 patent" (*id.*) as public information that somehow informed the persons working on the LSD Predictor of the existence of the '752 patent.

But, even if the LSD Predictor engineers were generally aware of these sources of information, that awareness would be insufficient to show that those engineers, or anyone else associated with the development of the LSD Predictor, was aware of the '752 patent. Neither the ISCA 1997 Paper nor the Chrysos & Emer Paper references the '752 patent or the patent application that led to it. *See generally* Ex. 125 (Chrysos & Emer Paper); Ex. 126 (ISCA 1997 Paper); Dkt. 103 (August Non-Infringement Report) ¶¶ 441-443.)   And, though the *WARF v. Intel* litigation involved the '752 patent, WARF has no evidence that the LSD Predictor engineers were aware of that lawsuit or what it involved.   It would be unfairly prejudicial and confusing for WARF to be permitted to argue to the jury that these non-patent sources of information about the inventors' work provided the requisite knowledge.   WARF should thus be precluded from arguing or suggesting that awareness of these non-patent materials makes Apple's infringement willful. *See* Fed. R. Evid. 403.

### B.   Apple-Assigned Patents Unrelated To The LSD Predictor That Reference The '752 Patent As Prior Art Do Not Show Knowledge Of The '752 Patent.

WARF has identified approximately 30 Apple-assigned patents that reference the '752 patent as prior art.[15]   (*See generally* Ex. 124 (WARF's Response to Interrogatories No. 10-14) at 17, 22-23; Ex. 123 (WARF's Fourth Supplemental Response to Interrogatories Nos. 1-9) at 18-19.)   None of those patents is related to the accused products in this case.   Moreover, there is no evidence that any of the inventors or the attorneys involved in prosecuting these patents had any

---

[15]   These patents fall into two groups:   patents that list Jeff Gonion as a named inventor (26 patents) (the "Gonion Patents"); and patents that list Sudarshan Kadambi, Po-Yung Chang, and Eric Hao as named inventors (3 patents) (the "Kadambi and Chang Patents").   None of those inventors had anything to do with the design of the LSD Predictor.

knowledge of the LSD Predictor or even any detailed knowledge of the '752 patent notwithstanding its inclusion in a prior art list of references.

WARF nevertheless may argue that the references to the '752 patent as prior art imparts knowledge of the '752 patent to Apple.  (*See, e.g.*, Dkt. 105 (Conte Infringement Report) ¶ 1107 ("the '752 Patent has repeatedly been identified as prior art during the prosecution of patent applications prepared by Apple and its employees"); Ex. 123 (WARF's Fourth Supplemental Response to Interrogatories Nos. 1-9) at 18-19 (listing Apple-assigned patents that "reference the '752 patent and/or papers published by the inventors of the '752 patent").)  However, for knowledge of an asserted patent to have relevance to willful infringement, that knowledge must be held by individuals who also have knowledge of the accused feature.  Without ***the same individuals*** within a company having knowledge ***of both***, a corporation cannot be found (by clear and convincing evidence) to have acted despite an objectively-defined risk that "was either known or so obvious that it should have been known to the accused infringer," as set forth in *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  *See ReefEdge Networks, LLC v. Juniper Networks, Inc.*, No. 13-CV-412-LPS, 2014 WL 1217263, at *2 (D. Del. Mar. 21, 2014) (quoting *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012)) (dismissing a plaintiff's willfulness allegation because the complaint failed to demonstrate "a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement were either known or were so obvious that they should have been known"); *Potter Voice Techs., LLC v. Apple Inc.*, No. C 13-1710, 2014 WL 46768, at *2-4 (N.D. Cal. Jan. 6, 2014) (denying defendant's motion to dismiss plaintiff's claim for willful infringement but noting that for willfulness generally "it is safe to say that the employees required to have knowledge of the asserted patent must have some connection to the

47

decision willfully to infringe"); *Cordance Corp. v. Amazon.com, Inc.*, 639 F. Supp. 2d 406, 414-15 (D. Del. 2009) (holding that patent counsel's knowledge of the asserted patent as a result of prosecuting the defendant's patents was insufficient to support a claim of willfulness where the patent counsel was not familiar with the product accused of infringement, reasoning that, for willfulness, the patent counsel must also have "knowledge of the accused product when he learned of the patent").  Because there is no evidence of any connection between the persons with knowledge of the '752 patent and the persons with knowledge of the accused devices, evidence of these patents and their reference to the '752 patent as prior art should be excluded under FRE 402 and FRE 403.

### C.   WARF's 2008 Emails Did Not Give Apple Knowledge Of The '752 Patent.

WARF may argue at trial that it notified Apple of infringement by sending two emails to Apple in April 2008.  ███████████████████████████████████████████████████

███████████████████████████████████████████████ (Ex. 4 (April 24, 2008 Email From Paul Pucci, APL-WARF_0001728927).)  ███████████████████████████

███████████████████████████████████████████████ (Ex. 5 (April 29, 2008 Email From Paul Pucci to Anand Sethuraman, WARF0117475).)  Neither email identifies any patent by name, number, or subject matter, nor identifies any Apple product that allegedly infringes any patent.  As such, these emails are insufficient to have provided Apple with any knowledge of the '752 patent or of Apple's potential infringement of that patent.  (*See generally* Apple's MIL # 3 (discussing the notice requirement for the imposition of damages under 35 U.S.C. § 287(a)).)  Accordingly, WARF should be precluded from offering any evidence or argument about these emails in support of its case of willful infringement or to even suggest that it notified Apple of the '752 patent before filing suit in January 2014 or to suggest that these cases support its claim of willful infringement.

**XIII.    Motion *In Limine* # 13:  WARF Should Be Precluded From Offering Evidence Or Argument Regarding Exhibit 5 To The Deposition Of Ms. Deanna Moris.**

Apple moves for an order excluding the testimony and opinion of Deanna Moris regarding the cost of development of the alleged invention claimed in the '752 patent.  At her deposition,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████   Because Exhibit 5 is not based on Ms. Moris's personal knowledge or perception, Apple requests that the Court preclude WARF from offering any evidence or argument related to Exhibit 5 under FRE 602 and/or FRE 701.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[16]    On January 9, 2015, Apple served WARF with a set of 30(b)(6) deposition topics, one of which was "[t]he cost of development of the alleged invention claimed in the '752 patent."  (*See* Ex. 137 (Defendant Apple Inc.'s Second 30(b)(6) Notice) at Topic 3.)   WARF designated University of Wisconsin employee Deanna Moris to provide 30(b)(6) testimony on behalf of WARF on that topic.





*First*, Ms. Moris is not an inventor on the '752 patent and did not personally participate in the development work that resulted in the '752 patent, and therefore has no personal

knowledge of the matters set forth in Exhibit 5.  Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."   Fed. R. Evid. 602.   Ms. Moris's calculations of the cost of development of the alleged invention claimed in the '752 patent are based entirely on hearsay in the form of her conversations with Mr. Sohi and Mr. Terani and the deposition testimony of others.  She did not rely on any direct documentary evidence of the development work, and her estimates involve her own judgment calls as to how best to perform the calculation.  Because her estimates in Exhibit 5 are not grounded in her personal knowledge of the development efforts resulting in the '752 patent, Exhibit 5 and any related testimony must be excluded under Rule 602.

**Second**, because Ms. Moris did not personally participate in the development work that resulted in the '752 patent, Exhibit 5 and Ms. Moris's testimony about Exhibit 5 do not qualify as lay opinion under Rule 701.  Rule 701 provides that a witness not testifying as an expert may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Ms. Moris's lack of personal knowledge regarding the cost of that development work means that her cost estimates are not "rationally based on [her] perception."  *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc*., 533 F.3d 555, 560 (7th Cir. 2008) (testimony of business owner was not proper lay opinion where owner's "attempt at valuation was not based on any knowledge obtained through his special relationship with the items in question; instead, he simply looked at a list of items provided by [plaintiff], and he estimated their value based on his extensive

experience purchasing and selling the type of goods at issue," noting that such testimony was the type "traditionally provided by an expert").  Ms. Moris's calculation of the development cost is even more objectionable than the testimony excluded in the *Titan International* case ██████████

███████████████████████████████████████████████████████

█████████ as the business owner in *Titan International* attempted to do.  (*See* Dkt. 232 (Moris Dep.) at 50:8-24.)  █████████████████████████████████

████████████████████████████████████████████. No part of Ms. Moris's calculation was based on her first-hand experience or perception, and therefore Exhibit 5 and all testimony related to that Exhibit must be excluded under Rule 701.

**Third**, Ms. Moris's testimony regarding the cost of development is not admissible as expert testimony.  WARF did not disclose Ms. Moris as an expert or provide an expert report from her.  *See* Fed. R. Civ. P. 26(a)(2) & 37; *Titan Int'l*, 553 F.3d at 561 (affirming exclusion of witness' testimony where defendant did not disclose witness as expert prior to disclosure deadline).

Accordingly, WARF should be precluded from introducing any evidence or argument related to Exhibit 5—including any testimony from Ms. Moris regarding Exhibit 5.

## XIV.   Motion *In Limine* # 14:  WARF Should Be Precluded From Referring To Itself As A "Charity" Or Discussing What It Does With Its Money Other Than To Pay Inventors.

During WARF's prior litigation with Intel Corporation involving the '752 patent, the court held that WARF could not refer to itself as a "charity" or "discuss what it does with its money other than to pay inventors" at trial.  *Wisconsin Alumni Research Found. v. Intel Corp.*, No. 08-cv-078-bbc, Dkt. 442, at 6 (W.D. Wis. Sept. 24, 2009) (Crabb, J.).  The same ruling is appropriate here.  Any characterization of WARF as a "charity" and any description of what

WARF does with the money that it makes beyond paying inventors is irrelevant to the parties' claims or defenses and would be more prejudicial than probative. This evidence should be excluded pursuant to FRE 402 and FRE 403.

WARF's desire to characterize itself as a "charity" has no bearing on the infringement, validity, and damages issues that the jury will be asked to decide. Fed. R. Evid. 402; *City of Guymon v. Cal Farley's Boys Ranch*, No. CIV-04-457-BA, 2006 WL 2990523, at *4 (W.D. Okla. Oct. 19, 2006) (granting plaintiff's motion *in limine* to exclude evidence concerning charitable nature of work done by defendant and holding that "the charitable nature of the [d]efendants' organization is not relevant to the issue of just compensation"). Beyond the amounts that WARF has paid inventors—which goes to the bias and credibility of the inventors of the '752 patent—the ways in which WARF spends its money (including the funding it provides to the University of Wisconsin) also do not relate to any issue in this case. Instead, this evidence could only serve to bias and prejudice the jury. For instance, by describing itself as a "charity," WARF may seek to engender sympathy from the jury and encourage the jury to increase its damages award. Descriptions of the ways in which the University of Wisconsin uses the money that WARF makes also may tempt the jury to award higher damages to try to "help" the University of Wisconsin. This would unfairly prejudice Apple. Fed. R. Evid. 403; *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *14 (N.D. Ill. Apr. 7, 2006) (excluding evidence of a corporation's charitable contributions due to the "potential for the jury [t]o decide the case based on an improper reason").

## XV.   Motion *In Limine* # 15:  WARF Should Be Precluded From Presenting Evidence Or Argument Concerning The University Of Wisconsin's Financial Condition.

WARF's damages expert, Ms. Catharine Lawton, repeatedly states in her expert report that the University of Wisconsin has been impacted by funding cuts and a decline in its

endowment.  Ms. Lawton refers to decreasing federal funding for university research, decreasing financial support from the state of Wisconsin, declining endowment, rising tuition costs, and the limited flow of venture capital into Wisconsin.  (Dkt. 243 (Lawton Report) ¶¶ 42, 339, 373.) Admission of such evidence, which has no probative value to the factual issues the jury will be asked to decide, would be unfairly prejudicial and would mislead the jury.  It should be excluded under FRE 402 and FRE 403.

*First*, whatever relevance the University of Wisconsin's financial condition may have to those who fund or administer the University of Wisconsin, it has no relevance to any issue committed to the jury, such as infringement, validity, or damages.  Ms. Lawton suggests that the University of Wisconsin's financial status relates to damages because it shows that WARF and the University were harmed by Apple not voluntarily paying for a license to the '752 patent. (Dkt. 243 (Lawton Report) ¶ 373.)   But the jury will be asked to measure damages by determining the value that the invention claimed in the '752 patent had to Apple and WARF— not by considering how WARF would have used money from Apple to improve the financial condition of the University of Wisconsin.

*Second*, evidence and argument relating to the University of Wisconsin's financial condition would be extremely prejudicial to Apple.  If the jury is permitted to hear that the University of Wisconsin is experiencing financial difficulties, it may increase its damages award. Fed. R. Evid. 403 was designed to preclude evidence that would induce this type of emotional decision-making.  *See Brooks v. City of Chicago*, No. 13-cv-03090, 2015 WL 3545386, at *5 (N.D. Ill. June 5, 2015) (precluding parties from discussing plaintiff's financial condition when it would "serve little purpose other than to arouse the jurors' biases, prejudices, and sympathies"); *Chesler v. Trinity Indus., Inc.*, No. 99 C 3234, 2002 WL 1822918, at *7 (N.D. Ill. Aug. 8, 2002)

(excluding evidence or reference to plaintiff's financial status as not relevant and potentially prejudicial).

**XVI. Motion *In Limine* # 16:  WARF Should Be Precluded From Referring To The Number Of Attorneys, Residence Of Attorneys, And Size And Location Of The Law Firms Employed By Apple.**

WARF should be precluded from offering evidence or argument regarding the number of attorneys Apple retained for this case, the residence of those attorneys, the size of the law firms employed by Apple, the locations of the law firms employed by Apple, or the fact that some of Apple's attorneys represented Intel in *WARF v. Intel Corp.*, No. 13-cv-346-bbc (W.D. Wis.). These facts have no bearing on the issues the jury will be asked to decide and would serve only to prejudice Apple.  They should be excluded pursuant to FRE 402 and FRE 403.

Reference to the number of attorneys that Apple hired for this case, where the attorneys live and work, and how large their law firms are will not assist the jury in resolving any of the infringement, validity, and damages issues that it will be asked to decide.  Fed. R. Evid. 402. This evidence could, however, inflame and confuse the jury.  For example, the jury may be misled into believing that the number of lawyers Apple hired indicates that Apple "needed" many lawyers to defend itself.  The jury could also be misled into believing that Apple can "afford" a large damages judgment given the number of lawyers it has retained.  Fed. R. Evid. 403 precludes evidence that is likely to elicit these reactions.  *See Strickholm v. Evangelical Lutheran Good Samaritan Soc.*, No. 4:11-cv-00059-BLW, 2013 WL 788096, at *6 (D. Idaho Mar. 1, 2013) (prohibiting "any reference by the parties to the number of attorneys representing any other party and where those attorneys are from"); *Green v. Logan's Roadhouse, Inc.*, No. 2:13-CV-238-KS-MTP, 2015 WL 200977, at *2 (S.D. Miss. Jan. 14, 2015) (granting

"[d]efendant's motion in limine as to any argument or reference to the number of Defendant's attorneys or their residence").

### XVII.  Motion *In Limine* # 17:  WARF Should Be Precluded From Offering Evidence Or Referring To Irrelevant Aspects Of Apple's Business.

WARF should be precluded from offering evidence or argument relating to irrelevant aspects of Apple's business, including allegations relating to the size of Apple, the compensation paid to Apple's employees, working conditions related to the manufacture of Apple products, or statements made by Apple's former CEO Steve Jobs that are unrelated to the issues in this case. This evidence is irrelevant and prejudicial and should be excluded pursuant to FRE 402 and FRE 403.

In her expert report, WARF's damages expert Catharine Lawton makes a series of remarks regarding Apple's business that have no relevance to the issues the jury will be asked to address at trial.  Ms. Lawton claims, for instance, that:  Steve Jobs once said that Apple is "shameless about stealing great ideas" (Dkt. 243 (Lawton Report) ¶ 106); Mr. Jobs stated that chips made by Motorola "sucked" (*id.* at n.494); Mr. Jobs accused Google of "rip[ping] off the iPhone" and referred to competitive products as "sh*t" (*id.* ¶ 631); Apple has tens of thousands of employees and owns or leases millions of square feet of buildings around the world (*id.* ¶ 122); and Apple employees have been "disgruntled about their compensation" (*id.* ¶ 208).  This type of evidence—and any similar statements regarding Apple's business, size, and employee relationships—is not relevant to the merits of this case and should be excluded.  Fed. R. Evid. 402; *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1326 (N.D. Ala. 2012) (corporation's size and assets are irrelevant to determination of infringement).

Moreover, statements that Mr. Jobs made regarding irrelevant issues and evidence relating to Apple's size, employee compensation, and employee working conditions would be

prejudicial to Apple.  This evidence may suggest to the jury that Apple has acted improperly—which it has not.  Permitting this evidence also would waste trial time.  If WARF were allowed to introduce evidence on these issues, Apple would be compelled to respond to the allegations.  This would lead to a side-show regarding irrelevant allegations and characterizations of Apple's business.  Fed. R. Evid. 403; *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."); *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 629 (7th Cir. 2009) (district court did not abuse its discretion in excluding a party's statements that "would have made the trial a trial of the [party], not of the case").  Accordingly, WARF should be precluded from offering any statements or evidence relating to the size of Apple, the compensation paid to Apple's employees, the working conditions of Apple employees, or statements made by Apple's former CEO Steve Jobs that do not relate to the issues the jury will be asked to decide.

## XVIII. Motion *in Limine* # 18:  WARF Should Be Precluded From Referring To Other Litigations Involving Apple.

Apple requests that the Court exclude from trial any argument or evidence regarding other lawsuits filed by or against Apple, including Apple's lawsuits with Samsung.  Evidence regarding Apple's unrelated lawsuits is irrelevant and prejudicial and should be excluded pursuant to FRE 402 and FRE 403.

WARF's damages experts refer in their reports to prior Apple litigations that have nothing to do with this case.  For example, Ms. Lawton refers repeatedly to Apple's litigations with Samsung, including the damages amounts that Apple sought from Samsung for infringement of patents that are unrelated to the '752 patent.  (Dkt. 243 (Lawton Report) ¶¶ 112, 285, 292, 296, 298, 420, 539-549, 563, 568-569, 686, 728, 778, 782.)  In fact, as set forth in

Apple's Motion to Exclude the Opinion and Testimony of Ms. Lawton, Ms. Lawton improperly relies on the amount that Apple argued Samsung should pay for a license to Apple patents covering user interface features to calculate damages in this case.  (*Id.* ¶ 782.)  WARF has not made any showing that any of Apple's prior litigations—including its litigations with Samsung—involved patents that are comparable in scope, technology, or value to the '752 patent-in-suit.  *See Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301, 1328, 1331 (Fed. Cir. 2009) (plaintiff must show that technology and value of patents at issue in prior license agreements are comparable to the technology and value of the patent-in-suit).  Reference to other Apple litigations should be excluded as irrelevant.  Fed. R. Evid. 402.

Reference to Apple's prior litigations also would prejudice and confuse the jury.  If the jury were permitted to hear evidence relating to prior Apple cases, it may believe that the fact that Apple has been involved in other patent litigations is relevant to the infringement determination in this case.  The jury may also be confused or biased by damages arguments and amounts at issue in Apple's prior litigations.  This is precisely the type of jury confusion that Fed. R. Evid. 403 was intended to prevent.  *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1574-75 (Fed. Cir. 1993) (evidence from other litigations risks confusing the jury by "exposing the jury to another judge's statements on the law" or the application of that law to the facts of another case); *Johnson v. Ford Motor Co.*, 988 F.2d 573, 581 (5th Cir. 1993) (upholding decision to exclude evidence of other lawsuits involving "allegations of mechanical defects distinguishable from the defect alleged in the case" on Rule 403 grounds); *Retractable Techs. v. Becton, Dickinson & Co.*, No. 2:07-CV-250, 2009 U.S. Dist. LEXIS 131236, at *7 (E.D. Tex. Oct. 8, 2009) ("[E]vidence of other litigation offered to prove Defendant's liability or the extent

of damages should be excluded pursuant to at least Federal Rules of Evidence 403, 404, and 408.").

**XIX.   Motion *in Limine* # 19:  Reference To Discovery Disputes Or The Sufficiency Of Either Party's Discovery Responses Should Be Excluded From Trial.**

Apple moves the Court for an order excluding any comment or discussion in the jury's presence of discovery disputes or the sufficiency of either party's discovery responses, whether brought to the Court's attention or not.  "Evidence concerning discovery disputes is not relevant to the questions of patent validity and infringement, and thus should not be presented to the jury."  *MFormation v. RIM*, No. 08-cv-04990-JW, Dkt. 903, at *4 (N.D. Cal. Mar. 29, 2012); *see Netairus Techs., LLC v. Apple Inc.*, No. 10-cv-3257-JAK, Dkt. 523 (C.D. Cal. Oct. 21, 2013) (granting motion *in limine* (Dkt. 416) to exclude evidence of discovery disputes and sufficiency of document production at trial).  Additionally, reference at trial by either side to a discovery dispute or the outcome thereof is likely to confuse the jury, and create an impression that one side or the other has attempted to gain an unfair advantage.  Such a reference at trial would also create inefficiencies, since additional trial testimony would be required to explain discovery procedures and conduct.

Accordingly, testimony or argument regarding discovery disputes should be excluded under FRE 401, FRE 402, and FRE 403.

**XX.   Motion *In Limine* # 20:  WARF Should Be Precluded From Offering Into Evidence Or Relying On Documents That It Produced On The Last Day Of Discovery.**

At approximately 7:00 pm CT on August 21, 2015—the last day of discovery (Dkt. 24, at 4)—WARF produced nearly 5,800 pages of documents to Apple.  This eleventh-hour production has prevented Apple from making ***any*** use of these documents ***during*** discovery, including with WARF's experts or fact witnesses.  WARF's production includes, for example, articles,

publications, and webpages; documents appearing to relate to prior art, performance testing benchmarks, and Intel products; letters of recommendation for the named inventors of the '752 patent and a publication authored by one of the WARF inventors; Wikipedia pages; documents purporting to describe Apple's LSD Predictor; and court filings from unrelated cases that existed well before the August 21, 2015 close of discovery.  (*See, e.g.*, Ex. 127 [WARF0155603] (2014 court order from an unrelated case); Ex. 128 [WARF0155452] (2013 trial transcript from an unrelated case); Ex. 129 [WARF0155670] (2009 blog post); Ex. 130 [WARF0154974] (2006 news article); Ex. 131 [WARF0155301] (comparison of Samsung Galaxy S6 vs. iPhone 6 Plus); Ex. 132 [WARF0155441] (ARM Cortex-A57 Processor spec sheet); Ex. 133 [WARF0157081] ("Multiscalar Processors" presentation by named inventor); Ex. 134 [WARF0157123] (2006 professorship recommendation letter for named inventor); Ex. 135 [WARF0155444] (Wikipedia entry for "Transistor count"); and Ex. 136 [WARF0154544] (1991 paper "IMPACT: An Architectural Framework for Multiple-Instruction-Issue Processors").)

The discovery cutoff should not be used as a means to effectively block the receiving party from making any use of produced documents during the discovery period.  This is particularly true where WARF has no excuse for not producing the documents earlier.  Even if these documents were relevant (and many of them are not), allowing WARF to seek to offer these documents as evidence or to otherwise use these documents at trial would unfairly prejudice Apple, as it has had no opportunity to utilize these documents in discovery.  *See* FRE 402, 403.  Accordingly, the Court should preclude WARF from offering into evidence or otherwise using at trial any document produced on the last day of discovery (within the Bates range WARF0154544-WARF00160315), where WARF could have produced the document earlier.

**XXI.   Motion *In Limine* # 21:  Trial Should Be Held On Liability And Damages Together, Followed By A Brief Second Phase On Subjective Willfulness If Necessary.**

Apple respectfully requests that this Court consolidate trial of the liability and damages issues in this case.  There is substantial overlap in the testimony and evidence Apple expects to present for both liability and damages.  All three of the witnesses Apple expects to call on liability issues will also testify on intertwined damages-related issues.  Similarly, at least one of WARF's expert witnesses will offer opinions on both liability and damages issues.  Bifurcation of liability and damages would lead to an inefficient duplication of testimony and evidence, without any clear benefit to the comprehension of either liability or damages issues by the jury.  In short, bifurcation in this case would lead to a waste of resources for the parties, the jury, and the Court.  Accordingly, Apple requests that the Court try liability and damages together in the same phase of the trial.

Subjective evidence of willfulness, however, is easily separable from both liability and damages, and any potential efficiency issues are overweighed by the possibility of prejudice to Apple.  Bifurcation of willfulness will allow the Court to rule on the objective prong of the willfulness test following the first phase of the trial, and will avoid any confusion and unfair prejudice that might result from the inclusion of subjective willfulness-related evidence in the liability/damages phase that might improperly infect the jury's determination of those issues.

District courts may order the bifurcation of liability and damages issues in patent cases when it is "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  The decision to bifurcate is in the discretion of the district court, which should consider the benefits and drawbacks to bifurcation on a case-by-case basis. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 09-C-0916, 2010 WL

3521567, at *1 (E.D. Wis. Sept. 7, 2010).   "The court, however, must be mindful of the factfinder's traditional role, which ordinarily is to make a determination on the basis of the case presented in its entirety."   *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) (citations omitted).   The party seeking bifurcation bears the burden of proving that bifurcation is warranted.   *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

"To determine whether bifurcation is warranted, courts generally consider the following three factors: 1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses."   *Weddingchannel.com Inc. v. The Knot, Inc.*, 2004 U.S. Dist. LEXIS 25749, *3 (S.D.N.Y. 2004) (internal quotation marks omitted).

## A.   Concerns Of Efficiency And Judicial Economy Warrant Consolidation Of Liability And Damages In One Trial.

In this case, the bifurcation of liability and damages would result in unnecessary expense, negatively impact juror comprehension, and lead to repeat presentations of the same evidence and witnesses due to the substantial overlap in both evidence and witness between the liability and damages aspects of the case.

For example, all three of the live witnesses Apple currently plans to call on liability issues—Mr. Gerard Williams, Dr. David August, and Dr. Robert Colwell—will also be part of Apple's damages rebuttal case.

Mr. Williams is an Apple engineer who will offer testimony about the development and technical operation of the accused Apple products.   In particular, Mr. Williams will offer testimony regarding the particular technology that WARF has accused of infringement:  the LSD Predictor contained within the A7, A8, and A8X Systems-on-a-Chip ("SoCs") found in the

iPhones and iPads at issue in this case.  Mr. Williams' testimony will comprise a key part of Apple's non-infringement case.  However, Mr. Williams will also offer testimony in Apple's damages case:  Mr. Williams will offer damages-related testimony regarding the performance benefit derived from the LSD Predictor, apportionment issues, and the availability of design-arounds.

Dr. August is Apple's expert regarding infringement issues.  Dr. August submitted a first liability report relating to non-infringement and a second report directed to damages issues.  Dr. August will play a central role in Apple's non-infringement case, explaining to the jury why the Apple products accused in this case do not infringe, but Dr. August will also offer testimony in Apple's damages case.  Dr. August's expected damages testimony relates to apportionment issues, rebuttal of WARF expert Dr. Annavaram's power-related testing, analysis of Apple's processor patents, non-infringing alternatives and design-arounds, and an analysis of issues related to the WARF/Intel patent license.  Dr. August also conducted his own performance tests to rebut the performance testing conducted by one of WARF's damages experts, Dr. Reinman.

Dr. Colwell is Apple's expert regarding invalidity issues.  Dr. Colwell submitted a liability report on invalidity and also submitted a rebuttal report on damages issues.  Dr. Colwell will offer testimony regarding the prior art for invalidity purposes, but will also offer testimony about the value of the '752 patent technology when viewed in the context of that same prior art.  Dr. Colwell's expected damages-related testimony will also include testimony regarding commercial processor design, non-infringing alternatives, the comparability of other patents Apple has licensed to the technology allegedly covered by the '752 patent, and criticisms of that invention.

In addition, Apple expects that WARF's expert Dr. Thomas Conte will offer testimony regarding both liability and damages. Dr. Conte submitted a liability report on infringement, but —like Drs. August and Colwell—also submitted an expert report directed to damages issues. Thus, all three of Apple's liability witnesses and at least one of WARF's liability witnesses are expected to present testimony on damages issues.

Given that Mr. Williams, Dr. August, Dr. Colwell, and Dr. Conte will offer testimony covering both liability and damages issues, bifurcation would waste significant resources. Bifurcation would force these witnesses to either stay at trial longer than they otherwise would, or travel to and from Madison twice rather than just once. Bifurcation would also lead to repeat presentations of the same evidence and witnesses, as at least these four witness would be forced to take the stand twice, and give testimony that substantially overlaps with testimony they will have already offered. Finally, there is no reason to think that offering potentially repetitive and overlapping testimony from these witnesses will increase juror comprehension; in fact, it may have the opposite effect if there is a significant gap between when a witness provides liability testimony and when that same witness provides damages testimony. A more efficient presentation, and one Apple believes would increase juror comprehension, would be for these witnesses to provide their liability testimony and damages testimony at the same time.

### B.   Willfulness Lacks Substantial Overlap With Liability, And Should Be Tried In A Separate Phase.

While the liability and damages issues in this case have substantial overlap, the same is not true of liability and willfulness. The Federal Circuit has stated that "willfulness and infringement present different underlying issues and, at least generally speaking, require different proof." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1317 (Fed. Cir. 2013). This Court has, in the past, separated willfulness issues into a separate phase of trial. *Ameritox,*

*Ltd. v. Millennium Health, LLC*, 2015 U.S. Dist. LEXIS 44082, at *3-4 (W.D. Wis. Apr. 3, 2015) ("Because a jury's finding of willful infringement is only material in determining the appropriate damages award and has no impact on any liability issue, the court finds generally that it is best-suited for the second phase of a bifurcated trial."). As this Court has also pointed out, trying willfulness in a separate phase of trial can have benefits in terms of judicial economy. *Id.* ("Judicial economy, therefore, strongly favors trying willful infringement as part of the second phase of the trial.").

> **C.     If The Court Orders Separate Trials On Liability And Damages, Prejudicial Evidence Principally Related To Damages Should Be Excluded From The Liability Phase Under Rule 403.**

Finally, should the Court decide to bifurcate trial into separate liability and damages phases, Apple moves to exclude during the liability phase evidence related principally to damages which, under Rule 403, would be unduly prejudicial to Apple.

For example, WARF has indicated that it intends to present evidence concerning its license to Intel in support of its contentions regarding the non-obviousness of the '752 patent. This type of evidence should be excluded from the liability phase of the trial because any probative value it may have regarding validity is substantially outweighed by a danger of unfair prejudice to Apple. Fed. R. Evid. 403. Even if the WARF/Intel license is relevant to secondary considerations of non-obviousness, allowing it into evidence (and particularly with the amount paid) in a liability-only trial without the counterweight of WARF's damages claim would be unduly prejudicial. WARF has presented a substantial claim for damages in this ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████. Allowing the WARF/Intel license into evidence while denying Apple the ability to compare it to WARF's excessive damages claims would be unduly prejudicial under Rule 403.

66

Apple's request for consolidation of liability and damages into one trial would avoid the issue above regarding the WARF/Intel license, as well as other disputes over which damages-related evidence may come in during the liability-only phase.  However, if the Court decides to bifurcate liability and damages issues, Apple respectfully requests that the Court exclude during the liability phase evidence related principally to damages which, under Rule 403, would be unduly prejudicial to Apple—including, but not limited to, evidence of the WARF/Intel license.

For the reasons stated above, Apple asks that the Court conduct trial for this matter in two phases:  a first phase directed to liability and damages, and a second phase, if necessary, directed to willfulness.

Dated:  August 28, 2015                  Respectfully submitted,

                                          /s/ Derek Gosma
                                          William F. Lee (*pro hac vice*)
                                          Lauren B. Fletcher (*pro hac vice*)
                                          Bryan S. Conley (*pro hac vice*)
                                          Wilmer Cutler Pickering
                                          Hale and Dorr LLP
                                          60 State Street
                                          Boston, MA  02109
                                          Tel:  (617) 526-6000
                                          william.lee@wilmerhale.com
                                          lauren.fletcher@wilmerhale.com

                                          David C. Marcus (*pro hac vice*)
                                          Andrea J.W. Jeffries (*pro hac vice*)
                                          Derek Gosma (*pro hac vice*)
                                          Wilmer Cutler Pickering
                                          Hale and Dorr LLP
                                          350 South Grand Avenue, Suite 2100
                                          Los Angeles, CA 90071
                                          Tel:  (213) 443-5300
                                          david.marcus@wilmerhale.com
                                          andrea.jeffries@wilmerhale.com

                                          Mark D. Selwyn (*pro hac vice*)

67

Wilmer Cutler Pickering
Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:  (650) 858-6000
mark.selwyn@wilmerhale.com

Catherine Cetrangolo
CETRA LAW FIRM LLC
20 North Carroll Street, 2d Floor
Madison, WI 53703
Tel: 608-535-9220
Email: cetrangolo@cetralaw.com

*Attorneys for Defendant Apple Inc.*