## INTRODUCTORY DAMAGES INSTRUCTIONS

**1. Overview**

Because you found that defendant Apple infringed the '752 patent, you will now be asked to decide what amount of damages will adequately compensate plaintiff WARF for that infringement.  The damages you award are intended to compensate the patent holder, not to punish the infringer.  In this phase of the trial, WARF must prove by a preponderance of the evidence (*i.e.*, that it is more likely than not) the amount of the damages it suffered because of the infringement of its patent.  WARF is not required to prove its damages with mathematical precision, but it must prove them with reasonable certainty.  WARF may not recover amounts that are speculative.

Do not measure damages by what the lawyers tell you the evidence will show or what they ask for in argument.  *You* will decide what the evidence shows, and their opinions as to what damages should be awarded should not influence you unless their opinions are supported by the evidence.  It is *your* job to determine the amount of the damages sustained from the evidence.  Examine the evidence carefully and impartially.  Do not add to the damage award or subtract anything from it because of sympathy to one side or because of hostility to one side.  Also, do not make any deductions because of any remaining doubt in your minds about Apple's liability.

**2. Reasonable Royalty**

As compensation, WARF is seeking to recover a reasonable royalty for Apple's infringement.  A royalty is an amount of money that someone pays a patent owner to be

able to use the patented invention.  A "reasonable royalty" is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both consider valid and that the infringer wants to use.

You should focus on what the expectations of the patent owner and the infringer would have been had they entered into an agreement right before the infringement began, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and the patent owner and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made due to the patented invention may be considered in determining the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In deciding what is a reasonable royalty, you may consider the factors that the parties typically consider in setting the amount that should be paid.  The following list is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty:

1)  Any royalties that others paid to the patent owner for the patented invention.

2) Royalties paid by the infringer or by others for patents comparable to the asserted patents.

3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4) Whether or not the patent owner has a policy of licensing or not licensing the patents.

5) Whether or not the patent owner and the infringer are competitors.

6) Whether being able to use the patented invention helps in making sales of other products or services.

7) The duration of the patent and the term of the license.

8) The profitability of the products made using the patents, and whether or not they are commercially successful or popular.

9) The advantages and benefits of using the patented inventions over old modes or devices, if any, that had been used for working out similar results, or the availability of other non-infringing alternatives.

10) The nature of the patented invention, the character of the commercial embodiments of it as owned and produced by the patent owner, and the benefits to those who have used the invention.

11) The extent of the infringer's use of the patented inventions and the value of that use to the infringer.

12) Any royalty amounts that are customary for similar or comparable patented inventions.

13) The portion of the profit that is due to the patented inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the infringer.

14) Expert opinions as to what would be a reasonable royalty.

15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article

3

embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

### 3.  Type of Reasonable Royalty

In this case, the parties agree that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed amount per unit sold.  The damages amount then would be the per unit royalty multiplied by the number of units sold.

### 4.  Apportionment

In determining a reasonable royalty you must make a reasonable estimate of the value of the patented technology.  WARF and Apple agree that damages in this case may not be based upon the value of the entire accused products (here, iPhones and iPads).  Instead, you must start with the smallest saleable unit.  WARF and Apple also agree in this case that the smallest *saleable* unit is the A7, A8, and A8X systems-on-a-chip.  Within the A7, A8, and A8X, you must apportion the incremental value that the claimed invention contributes.  To apportion means to divide and allocate.  The goal of apportioning value between the patented and non-patented features is to tie carefully the amount of damages to the patented invention's footprint in the marketplace.