## CLOSING DAMAGES INSTRUCTIONS

Members of the Jury:

At the outset of the damages phase of this trial, I provided instructions on the law of damages applicable to your deliberations.  You will have those, along with my introductory, infringement and deliberations instructions.  Before you hear closing arguments on damages, I will provide you with a few, more specific instructions regarding legal matters that arose during the damages phase of trial.

1. **Verdict Form**

Before doing that, let's review the special verdict form, which consists of 3 questions.  **[Read special verdict form.]**  Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner.  Read the introductory portion of each question very carefully before you undertake to answer it.

2. **Products Made for Apple by Samsung**

As you saw in the special verdict form, in calculating damages, you must consider whether to include products manufactured by Samsung in the United States but then shipped overseas.  Apple refers to these products as "wafers."  In determining whether to include these products in the damages award, you must *first* consider whether the products infringe *at the time they leave the United States*, before any additional manufacturing or processing occurs outside of the United States.  As described in the closing instructions on liability, to demonstrate infringement, WARF must prove by a

preponderance of the evidence *every* element in the particular claim of the '752 patent that you are considering is found in Apple's accused products exactly as it is in the claim. In other words, if further manufacturing or processing is required for these products to infringe, then the products manufactured by Samsung in the United States but then shipped overseas were not "made" in the United States for purposes of establishing infringement, and those products may not be included in your damages award. In reaching your decision, you should refer to the closing instructions on infringement in the first phase of the trial.

If you find that the products infringe at the time they leave the United States, you must then consider the *second* special verdict question: whether Samsung's manufacturing is attributable to Apple. For a party to be liable for direct patent infringement, that party must commit all the acts necessary to infringe the patent, either personally or vicariously. Here, Samsung's act of making the products is attributable to Apple if Samsung performed an act of infringement under Apple's control or direction. WARF has the burden of demonstrating this by a preponderance of the evidence.

Finally, in determining the amount of damages in response to Question No. 3 on the special verdict form, you should only include in your calculation the products manufactured by Samsung in the United States but then shipped overseas if you find *both* that (1) those products infringe when they leave the United States *and* (2) Samsung's manufacturing is attributable to Apple. Of course, in determining the per unit royalty, you should refer to the court's introductory instructions on the parties' hypothetical negotiation.

2

3. **Comparable Agreements**

As you heard in the court's introductory instructions, you may consider prior agreements by WARF to license the invention in the patent-in-suit under the *Georgia-Pacific* factors. Actual licenses for the patent-in-suit from around the time that Apple first elected to use the allegedly infringing technology can be highly probative as to what constitutes a reasonable royalty because such licenses may reflect the economic value of the patent-in-suit in the marketplace at the relevant time. In determining the relevance of the Intel agreement, you may also consider the fact that the license arose out of a litigation settlement.

In addition, you may consider prior agreements by WARF or Apple to license or acquire similar technology, but only if the party offering the agreement has proven that it is more probable than not that the prior agreement is both technologically and economically comparable to the license the parties would have agreed to in the hypothetical negotiation here. To make this showing, the party offering the prior agreement as evidence must compare the scope, context, and worth of the prior agreement to the scope, context, and worth of a license to the patent-in-suit. Showing only a loose or vague comparability between different technologies or licenses fails to meet this burden.