**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

WISCONSIN ALUMNI RESEARCH FOUNDATION,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 14-cv-00062-WMC

**FILED UNDER SEAL**

**CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER**

# WARF'S MOTION FOR AN ACCOUNTING, SUPPLEMENTAL DAMAGES THROUGH THE DATE OF JUDGMENT, PREJUDGMENT INTEREST AND POST-JUDGMENT INTEREST

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. THE COURT SHOULD ORDER APPLE TO PROVIDE A COMPLETE ACCOUNTING OF ITS INFRINGING SALES MADE AFTER JUNE 27, 2015 THROUGH ENTRY OF JUDGMENT ON OCTOBER 26, 2015 .......... 1

III. WARF IS ENTITLED TO RECOVER SUPPLEMENTAL DAMAGES AT THE REASONABLE ROYALTY RATE FROM THE JURY VERDICT .......... 6

IV. WARF REQUESTS THAT THE COURT AWARD PREJUDGMENT INTEREST .......... 8

V. WARF IS ENTITLED TO POST-JUDGMENT INTEREST AT THE STATUTORY RATE ON ALL AMOUNTS AWARDED .......... 10

VI. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-CV-248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011) .......... 5, 7

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, No. 1:02-CV-02590, 2005 WL 1498667 (N.D. Ill. June 9, 2005) .......... 5, 8

*Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288 (9th Cir. 1995) .......... 12

*Arthur Young & Co. v. Reves*, 937 F.2d 1310 (8th Cir. 1991) .......... 13

*Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2015 WL 5568360 (N.D. Cal. Sept. 22, 2015) .......... 5, 7

*Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096 (N.D. Cal. 2002) .......... 11

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964 (Fed. Cir. 1986) .......... 9, 11

*Cement Div., Nat. Gypsum Co. v. City of Milwaukee*, 950 F. Supp. 904 (E.D. Wis. 1996) *aff'd*, 144 F.3d 1111 (7th Cir. 1998) .......... 13

*Devex Corp. v. Gen. Motors Corp.*, 749 F.2d 1022 (3d Cir. 1984) .......... 12

*Douglas Dynamics LLC v. Buyers Prods. Co.*, 76 F. Supp. 3d 806 (W.D. Wisc. 2014) .......... 10

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) .......... 6

*Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275 (5th Cir. 1991) .......... 13

*General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983) .......... 9

**Page(s)**

*Golden Hour Data Sys., Inc. v. emsCharts, Inc.*,
No. 2:06-CV-381-JRG,
2014 WL 8708239 (E.D. Tex. Mar. 31, 2014) ........................................................ 8

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009) ........................................................ 5

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*,
833 F. Supp. 2d 333 (E.D.N.Y. 2011) ........................................................ 5

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
No. 2:97-CV-01383-EJW-LRL,
2001 WL 34778689 (D. Nev. Aug. 1, 2001) ........................................................ 4, 7

*Miller v. Artistic Cleaners*,
153 F.3d 781 (7th Cir. 1998) ........................................................ 12

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
822 F. Supp. 2d 639 (E.D. Tex. 2011) ........................................................ 7

*Nat'l Instruments Corp. v. Mathworks, Inc.*,
No. 2:01-CV-11-TJW,
2003 WL 24049230 (E.D. Tex. June 23, 2003) ........................................................ 6, 8

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
847 F.2d 795 (Fed. Cir. 1988) ........................................................ 10

*Student Loan Mktg. Ass'n v. Lipman*,
45 F.3d 173 (7th Cir. 1995) ........................................................ 12

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
862 F.2d 1564 (Fed. Cir. 1988) ........................................................ 11

*Sun Ship, Inc. v. Matson Navigation Co.*,
785 F.2d 59 (3d Cir. 1986) ........................................................ 12

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010) ........................................................ 4

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015) ........................................................ 5

*Whitserve, LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ........................................................ 6

**Statutes**

28 U.S.C. § 1961 ........................................................ 1

**Page(s)**

28 U.S.C. § 1961(a) .......... 12, 13

28 U.S.C. § 1961(b) .......... 13

35 U.S.C. § 284 .......... 1, 9

**Other Authorities**

F.R. 59(e) .......... 1

## I. INTRODUCTION

Plaintiff Wisconsin Alumni Research Foundation respectfully moves for (1) an order directing Defendant Apple Inc. to provide WARF with an accounting of the number of infringing units sold after June 27, 2015 through the date the Court entered judgment on October 26, 2015 (Dkt. 657); (2) supplemental damages, at the [redacted] rate the jury awarded WARF in its verdict, to compensate WARF for the infringing units sold after June 27, 2015 through the date of judgment on October 26, 2015; (3) prejudgment interest on the damages and supplemental damages; and (4) post-judgment interest under 28 U.S.C. § 1961 based on the total money award, including all damages, supplemental damages, prejudgment interest and costs awarded to WARF. WARF further requests pursuant to Rule 59(e) of the Federal Rules that the Court enter an Amended Judgment that includes the specific amount of supplemental damages and prejudgment interest to which WARF is entitled, to be calculated after WARF receives the accounting and determines the number of infringing sales made by Apple after June 27, 2015 through the entry of judgment.[1] This motion is timely as judgment on the jury verdict was entered by the Court on October 26, 2016.

## II. THE COURT SHOULD ORDER APPLE TO PROVIDE A COMPLETE ACCOUNTING OF ITS INFRINGING SALES MADE AFTER JUNE 27, 2015 THROUGH ENTRY OF JUDGMENT ON OCTOBER 26, 2015

Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and

[1] This motion is only directed to the period of time up to and including the October 26, 2015 entry of judgment on the jury verdict. Because Apple continues to infringe in the face of this Court's final judgment, WARF also intends to request equitable relief, for post-judgment infringing sales, including, but not limited to, an injunction and/or an ongoing royalty. WARF will present issues relating to post-judgment, forward-looking relief in a separate motion.


costs as fixed by the court." On October 26, 2015, the Court entered judgment for WARF on the jury verdict in the amount of $234,277,669.00. Dkt. 657. This judgment compensated WARF for only a ***portion*** of Apple's infringing sales.

In particular, the damages period at trial concerned only the specific number of infringing units that Apple sold between January 31, 2014 and June 27, 2015 (the end of the last quarter for which Apple provided sales data). WARF and Apple agreed to the particular number and both presented to the jury royalty calculations based on those agreed number of accused units. *See* Dkt. 583-3 (Exhibit C, containing correspondence confirming WARF and Apple's stipulation to an agreed number of infringing units sold during the damages period for trial); Dkt. 651-15 at 94-96 (Apple's closing demonstratives listing "Number of Accused Products" and performing "Damages Calculation" on that agreed number); Ex. H to Frischling Decl. (WARF's closing demonstrative no. 27 identifying the same numbers of units). The judgment on the jury verdict does not include any compensation to WARF for Apple's infringing sales made after June 27, 2015.

WARF is entitled to supplemental damages for all infringing sales made after June 27, 2015 through the entry of judgment on October 26, 2015. But to date, Apple has produced only a summary of its sales through September 26, 2015, the close of Apple's 2015 fiscal year. *See* Frischling Decl., Exs. C & D (sales summaries through September 26, 2015) and Ex. F (Nov. 12, 2015 email from Apple counsel). WARF requested that Apple also provide sales data up through the date of the October 26, 2015 judgment so as to avoid piecemeal submissions to the Court regarding supplemental damages and avoid delaying entry of a judgment from which appeal will be taken. *See id.* Apple refused, contending that it does not routinely maintain or report sales on other than a quarterly basis. Frischling Decl., Ex. F (Nov. 12, 2015 email from Apple counsel stating that [REDACTED]

[redacted]"). This contention is at odds with Apple's own practices where, for example, it is able to report first weekend sales of new iPhone models (Friday – Sunday) the next day. *See* Lawton Decl. at ¶ 10. As described in detail in the Lawton declaration, Apple implemented a "just-in-time" or "JIT" system of sales and inventory management in 1999. *See id.* at ¶ 32. Apple uses a Sales and Distribution system from a software company known as SAP, which includes real-time, online access to sales information, which should include nearly real-time information on unit sales. *See id.* at ¶ 33. In March 2010, Apple's IS&T Sr. Developer, Jake Logan, posted a video online that describes Apple's SAP system in detail, explaining that Apple's SAP database "is the system of record for order management at Apple." *Id.* at ¶ 38. Mr. Logan goes on to explain that this software provides the ability, for example, to "drill down" into Apple's sales data, to "slice the data in different ways," and to determine "where sales are up or sales are down." *Id.* The accompanying slide on the video states that this software permits Apple personnel "to mine sales data to gain insight into Apple's business." *Id.* Apple has also produced documents in this litigation that show it can create reports with partial quarter sales. For example, [redacted] *Id.* at ¶ 42(a). Even Apple's recent job postings on *LinkedIn* indicate that its employees have access to precisely the type of intra-quarter "real time" data WARF is requesting. *See id.* at ¶¶ 39-41 (quoting Apple job listings that discuss responsibilities like working "with the multiple levels of the Product Marketing, Research, Finance, Retail, and iTunes teams, to architect, build, and maintain analytics tools and provide timely and insightful reporting" and "Design[ing] applications to deal with real time reporting requirements").

In light of these facts, it is difficult to believe that Apple is incapable of generating from its SAP and other accounting systems at least a reasonably reliable report of sales from September 27 through October 26, 2015. The Court should direct Apple to provide an accounting, including, if necessary, depositions to resolve this issue of what Apple's accounting systems are capable of producing. Apple has offered to provide data for the entire quarter from September 26, 2015 through December 2015 sometime after that quarter closes. *See* Ex. F to Frischling Decl. But this offer does not solve the more fundamental problem of isolating Apple's sales only through the entry of judgment on October 26, 2015. If WARF waits until late January 2016 for Apple to produce its complete sales information for the current quarter, the data will lack the necessary level of granularity and WARF will be forced to estimate the portion of those sales that occurred through October 26, 2015. In addition to creating unnecessary delay, this approach would introduce needless disputes and potential for error. Accordingly, WARF requests the Court order an accounting from Apple, so WARF may accurately calculate the amount of supplemental damages necessary to compensate WARF for Apple's infringement through the date of judgment.

Ordering the adjudged infringer to provide an accounting for infringing sales not included in the jury's verdict is standard practice in patent cases. *See, e.g.*, *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) (affirming district court's grant of an accounting for infringing sales not considered in the jury's verdict); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. 2:97-CV-01383-EJW-LRL, 2001 WL 34778689, at *18-*19 (D. Nev. Aug. 1, 2001) (granting the patentee's motion for accounting of sales that were not considered in either party's expert reports and were not presented to the jury); *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 349 (E.D.N.Y. 2011) (granting the patentee an accounting for

supplemental damages for infringement after the end of the damages period presented at trial based on discovery orders in the case).

In order for WARF to determine the amount of supplemental damages to which it is entitled, the accounting should include the number of infringing units sold pre-verdict that the jury did not consider as well as post-verdict sales that Apple has made through the date of judgment. In other words, the accounting should be provided for all infringing sales made after June 27, 2015 through the October 26, 2015 date of judgment so damages can be awarded to compensate WARF "for the entire period of infringement." *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-CV-248, 2011 WL 4899922, at *2-*4 (E.D. Va. Oct. 14, 2011).

With respect to the period from June 28, 2015 through the verdict, courts routinely award supplemental damages for pre-verdict infringing sales not covered by the jury verdict due to limitations on the information available at trial. *See, e.g.*, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1378 (Fed. Cir. 2015), petition for cert. filed (U.S. July 17, 2015) (No. 15-85) ("If that period [considered by the jury] ends before the date of the jury verdict, the district court may award supplemental damages in light of that gap period."); *ActiveVideo*, 2011 WL 4899922, at *4; *see also Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, No. 1:02-CV-02590, 2005 WL 1498667, at *2 (N.D. Ill. June 9, 2005) (granting the patentee's motion to enter a supplemental damages calculations, including pre-verdict infringing sales); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 609 F. Supp. 2d 951, 959-65, 987 (N.D. Cal. 2009) (granting patentee's request for supplemental damages incurred after the "the last date for which [the patentee] was able to present evidence of [the infringer's] sales to the jury"); *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2015 WL 5568360, at *21 (N.D. Cal. Sept. 22, 2015) (concluding that the patentee was entitled to supplemental damages for

infringing sales, including pre-verdict sales, not considered by the jury). Here, there is no dispute that Apple's sales data for trial were limited to sales through June 27, 2015.

An accounting with respect to post-verdict sales is necessary for the same reasons because "failure to award such damages would grant an infringer a windfall by enabling it to infringe without compensating a patentee for the period of time between the jury's verdict and the judgment." *Nat'l Instruments Corp. v. Mathworks, Inc.*, No. 2:01-CV-11-TJW, 2003 WL 24049230, at *4 (E.D. Tex. June 23, 2003); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1213 (Fed. Cir. 2010) (holding that the district judge properly amended a judgment in favor of the patentee to include damages for infringing sales occurring after the jury returned its verdict and before the court entered judgment); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012) (vacating and remanding denial of supplemental damages for post-verdict infringing conduct, and instructing the court to "give due consideration to any request for an accounting").

An order of the Court is necessary to ensure that Apple provides necessary document production and/or other discovery to determine the appropriate sales figures through October 26, 2015 and to permit WARF to make the necessary calculations that may be reflected in the judgment.

## III. WARF IS ENTITLED TO RECOVER SUPPLEMENTAL DAMAGES AT THE REASONABLE ROYALTY RATE FROM THE JURY VERDICT

Once Apple has provided WARF with a complete accounting of infringing sales made after June 27, 2015 through the date of judgment, WARF requests that the Court enter a revised judgment awarding WARF, in addition to the amount of the jury verdict, supplemental damages on those sales based on the effective rate in the jury's verdict. It is well-established that such "supplemental damages are calculated in accordance with the damages awarded in the jury verdict." *ActiveVideo*, 2011 WL 4899922, at *2; *see also Asetek Danmark*, 2015 WL 5568360,

at *21 (holding that the patentee was entitled to supplemental damages covering infringing sales after the period considered by the jury through the date of the verdict at the jury verdict's rate); *Mikohn*, 2001 WL 34778689, at *22-*23 (holding that "[i]t is therefore well within the ambit of reasonableness to apply" the royalty rate from the jury award for infringing sales occurring after the period considered by the jury); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 642-43 (E.D. Tex. 2011) (awarding supplemental damages at the same royalty rate determined by the jury for the period of infringement not covered by the verdict).

The parties agreed during trial that damages to compensate WARF for the infringement were to be based on a per-unit reasonable royalty. Dkt. 648 (Introductory Damages Jury Instructions, p. 4 ("In this case, the parties agree that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed amount per unit sold.")). As noted above, the parties also stipulated as to the number of accused units sold between January 31, 2014 (complaint filing) and June 27, 2015 (last quarter of sales data produced). *See* Dkt. 583-3 (correspondence confirming counsel's agreement to the number of units to be presented to the jury). This includes the [redacted] units of infringing products sold in or shipped to the United States, as well as the [redacted] units of infringing products sold outside of the United States that included chips for which Samsung fabricated wafers in Texas. *Id.* Both during trial and in closing, both parties represented to the jury that the total number of accused units was exactly [redacted] (assuming, as the jury ultimately found, that the Samsung fabricated units are included). *See, e.g.*, Ex. H to Frischling Decl. (WARF demonstrative no. 27 using that number of units to calculate its total damages); Dkt. 651-15 at 94-96 (Apple's closing demonstratives listing "Number of Accused Products" and performing "Damages Calculation" on that agreed number).

Although the jury verdict itself did not identify a royalty rate, because the number of units was stipulated, it is easy to determine the effective rate. *See* Trial Tr., 10/16/15 at 83:7-14 ("THE COURT: . . . . If the jury says [Samsung fabricated units are] included, you'll know what the number was, you can divide, and you can conclude what the royalty rate is."); *id.* at 94:17-21 ("THE COURT: Okay. Very good. So you would agree that you would – we'll know what the royalty rate is based on the special verdict. Mr. LEE: We should be able to reverse engineer."). The jury's verdict of $234,277,660.00 (Dkt. 642, at 2), divided by the stipulated infringing units, works out to per unit. Numerous cases support use of a royalty rate calculated in this fashion. *See, e.g.*, *Aero Products*, 2005 WL 1498667, at *2 (affirming the patentee's calculation of a royalty rate for supplemental damages by dividing the total amount in the general verdict by the amount in sales to reach a royalty rate, and holding that "evidence adduced at trial [was] sufficient" to support the rate); *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, No. 2:06-CV-381-JRG, 2014 WL 8708239, at *14 (E.D. Tex. Mar. 31, 2014) (deriving the appropriate base royalty from the jury's total royalty award); *Nat'l Instruments*, 2003 WL 24049230, at *4 (applying an implied royalty rate calculation consistent with the jury's award to calculate supplemental damages). Dividing the jury's damages verdict by the stipulated number of accused units (including those fabricated by Samsung in Texas in light of the jury's answers to the special interrogatories) yields a per-unit rate of . *See* Lawton Decl. at ¶ 6.

WARF respectfully requests that the Court award WARF supplemental damages for all prejudgment infringing sales not considered by the jury at the rate of per unit. WARF will submit a declaration from its expert Catharine Lawton calculating the precise amount of supplemental damages after it obtains the updated accounting of sales information from Apple. Supplemental damages through September 26, 2015 are summarized in Ms. Lawton's Table 1:

Lawton Decl. at 4, Table 1.

## IV. WARF REQUESTS THAT THE COURT AWARD PREJUDGMENT INTEREST

WARF also requests that the Court award prejudgment interest on the damages, including interest on the supplemental damages. Because the purpose of the damages award under 35 U.S.C. § 284 is to provide "complete compensation" to patentees, which includes an award of "interest and costs," the Supreme Court has concluded that "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-57 (1983). There is no justification for withholding interest from WARF.

The rate of prejudgment interest and whether it should be compounded are within the discretion of the Court. In determining the rate, the Court "must be guided by the purpose of prejudgment interest, which is to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (internal quotation marks omitted). "Generally, prejudgment interest should be awarded from the date of *infringement* to the date of judgment." *Douglas Dynamics LLC v. Buyers Prods. Co.*, 76 F.

Supp. 3d 806, 820 (W.D. Wisc. 2014) (citing *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (emphasis added)).

In previous cases, this Court has awarded prejudgment interest at a rate that reflects what the patentee "would actually have earned on any royalties or profits it received." *Douglas Dynamics*, 76 F. Supp. 3d at 820. This approach fits well with WARF given that funds WARF receives for intellectual property licensing or recoveries typically become part of WARF's invested endowment, as explained in more detail in the concurrently filed Lawton declaration. *See* Lawton Decl. at ¶¶ 16-17. For example, *Id.* . So WARF's returns on its LTP Fund during the damages period reflect the most accurate measure of the value WARF lost because of Apple's failure to take a license and pay royalties.

WARF's LTP Fund has returned approximately during the period from January 31, 2014 through the entry of judgment. WARF therefore requests prejudgment interest in the amount of , compounded quarterly. If the Court disagrees that WARF's return on its LTP Fund is the proper measure of prejudgment interest, Ms. Lawton has also performed calculations using the rate of interest paid by WARF in 2014 and 2015 on bonds that were issued in December 2009 and the prime rate, (3.25%). *See* Lawton Decl. at ¶¶ 21-29.

Compounding the interest quarterly is reasonable here for at least the following reasons: First, the Federal Circuit has affirmed prejudgment interest rates that are compounded quarterly. *See, e.g.*, *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir.

1988). [redacted] WARF's agreements similarly demonstrate that it commonly receives royalty payments on a quarterly basis. *See* Lawton Decl. at ¶¶ 13, 15. Indeed, quarterly payments in patent license agreements are common. *Id.* at ¶ 15.

Because an actual license agreement between WARF and Apple would likely require the payment of royalties due on a quarterly basis, interest should be compounded quarterly to "ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonably royalty agreement." *Bio-Rad Labs.*, 807 F.2d at 969 (Fed. Cir. 1986) (internal quotation marks omitted). *See also Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1101 (N.D. Cal. 2002) (agreeing with the plaintiff that it was appropriate to compound interest quarterly "because royalty agreements are typically paid on a quarterly basis").

When WARF obtains the necessary sales figures and has calculated the total amount of damages through the date of judgment, WARF's damages expert Catharine Lawton will perform the appropriate calculations and submit an updated declaration to the Court. In the meantime, Ms. Lawton has calculated prejudgment interest using the data Apple has provided through September 26, 2015:

[redacted]



Lawton Decl. at 11, Table 2.

## V. WARF IS ENTITLED TO POST-JUDGMENT INTEREST AT THE STATUTORY RATE ON ALL AMOUNTS AWARDED

Post-judgment interest at the federal statutory rate "***shall*** be allowed on ***any money judgment*** in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (emphasis added). Once a judgment is obtained, post-judgment "interest thereon is mandatory without regard to the elements of which that judgment is composed." *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995); *Miller v. Artistic Cleaners*, 153 F.3d 781, 785 (7th Cir. 1998) ("Of course, regardless of whether there is any reference to post-judgment interest in the pleadings, a court's order, or the entry of a money judgment, a prevailing plaintiff in federal court is automatically entitled to post-judgment interest."); *Student Loan Mktg. Ass'n v. Lipman*, 45 F.3d 173, 176 (7th Cir. 1995) ("[P]ost-judgment interest is awarded automatically by statute, and the statute itself sets the applicable rate.").

Similarly, "it is well-established… that post-judgment interest also applies to the prejudgment interest component of a district court's monetary judgment." *Air Separation*, 45 F.3d at 290-91; *see also Sun Ship, Inc. v. Matson Navigation Co*., 785 F.2d 59, 63 (3d Cir. 1986) ("28 U.S.C. § 1961 . . . provides for post-judgment interest and . . . that interest should be calculated on the amount of the district court's judgment—that is $4,272,864.88 plus prejudgment interest"); *Devex Corp. v. Gen. Motors Corp.*, 749 F.2d 1022, 1022 (3d Cir. 1984) (affirming lower court's award of post-judgment interest "on the original $19 million judgment," which consisted of approximately $8 million in royalties and $11 million in prejudgment interest); *Fuchs v. Lifetime Doors, Inc*., 939 F.2d 1275, 1280 (5th Cir. 1991) ("[W]e direct the district court to award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees."); *Arthur Young & Co. v. Reves*,

937 F.2d 1310, 1338 (8th Cir. 1991) ("28 U.S.C. § 1961 specifically authorizes post-judgment interest, and we believe such interest is appropriate on both the damages and prejudgment interest"); *Cement Div., Nat. Gypsum Co. v. City of Milwaukee*, 950 F. Supp. 904, 911 (E.D. Wis. 1996) ("An award of post-judgment interest on an underlying award of prejudgment interest does not constitute impermissible compounding of interest . . . ."), *aff'd*, 144 F.3d 1111, 1117 (7th Cir. 1998) (explaining that prejudgment interest "is part of the actual damages sought to be recovered").

Post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield… for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest is compounded annually. *Id.* at § 1961(b). For the calendar week preceding the Court's October 26, 2015 entry of judgment, the applicable rate was 0.23%. Thus, upon resolution of the parties' motions regarding supplemental damages, prejudgment interest and costs, the Court should include in its order post-judgment interest on the total money judgment at a rate of 0.23%, compounded annually until the judgment is satisfied.

## VI. CONCLUSION

To allow WARF to obtain all the relief to which it is entitled now that the jury has found in WARF's favor and the Court has entered an initial judgment on the verdict, WARF requests (1) an accounting of infringing sales made after June 27, 2015 through October 26, 2015, including any discovery necessary to determine the number of infringing units sold from September 28, 2015 (start of Apple's FY2016) through October, 26, 2015 (date of judgment); (2) supplemental damages at a rate of [REDACTED] to be applied to the infringing sales made through the date of judgment; (3) prejudgment interest at the [REDACTED] on WARF's LTP Fund during the period from filing to judgment in this case, compounded

quarterly; and (4) post-judgment interest at the statutory rate until the judgment is satisfied in full. WARF further requests leave to file a supplemental Lawton declaration that calculates WARF's supplemental damages, prejudgment interest and post-judgment interest after Apple provides the requested accounting of sales through October 26, 2015.

                                                                    Respectfully submitted,

Dated: November 23, 2015        By:  */s/ Jennifer L. Gregor*

                                              Morgan Chu
                                              Gary Frischling
                                              Jason Sheasby
                                              Alan Heinrich
                                              Christopher Abernethy
                                              Amy Proctor
                                              IRELL & MANELLA LLP
                                              1800 Avenue of the Stars, Suite 900
                                              Los Angeles, CA 90067-4276
                                              Telephone: (310) 277-1010
                                              MChu@irell.com; GFrischling@irell.com;
                                              JSheasby@irell.com; AHeinrich@irell.com;
                                              CAbernethy@irell.com; AProctor@irell.com

                                              Jennifer L. Gregor
                                              GODFREY & KAHN, S.C.
                                              One East Main Street, Suite 500
                                              Madison, WI 53703
                                              Telephone: (608) 257-3911
                                              JGregor@gklaw.com

                                              *Attorneys for Plaintiff*
                                              *Wisconsin Alumni Research Foundation*