# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

WISCONSIN ALUMNI RESEARCH
FOUNDATION,

                    Plaintiff,

          v.

APPLE, INC.,

                    Defendant.

Case No. 14-cv-00062-WMC

---

**WARF'S OPPOSITION TO APPLE'S MOTION TO STRIKE CERTAIN
DECLARATIONS AND SUPPORTING DOCUMENTS SUBMITTED WITH WARF'S
POST-TRIAL REPLY BRIEFS AND THE PORTIONS OF THOSE BRIEFS THAT
RELY ON THOSE MATERIALS**

---

**FILED UNDER SEAL – INFORMATION SUBJECT TO PROTECTIVE ORDER**

Morgan Chu
Gary Frischling
Jason Sheasby
Alan Heinrich
Christopher Abernethy
Amy Proctor
Tony Rowles
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199
MChu@irell.com; GFrischling@irell.com;
JSheasby@irell.com; AHeinrich@irell.com;
CAbernethy@irell.com; AProctor@irell.com;
TRowles@irell.com

Jennifer L. Gregor
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone:   (608) 257-3911
Facsimile:    (608) 257-0609
JGregor@gklaw.com
*Attorneys for Plaintiff*
*Wisconsin Alumni Research Foundation*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................i

II.     LEGAL STANDARD .........................................................................................2

III.    THE COURT SHOULD DENY APPLE'S MOTION TO STRIKE..............................3

        A.      WARF's Reply Declarations Properly Responded to Apple's
                Admission that ███████████████ and Properly Pointed
                Out the Flaws in the Davis Declaration ...............................................................3

                1.      Apple Concealed Key Facts Until After WARF Filed Its Motion............4

                2.      Ms. Lawton's and Professor Knittel's Declarations Properly
                        Respond to Apple's Theories in Opposition................................................6

                3.      WARF's Reply Brief Arguments Are Proper........................................11

                4.      The Authority Cited By Apple Is Not Applicable Here ........................12

        B.      Responsive Evidence Supporting WARF's Reasonable Prejudgment
                Interest Claim Should Not Be Stricken................................................................15

        C.      Purely Responsive Evidence of WARF's Licensing Practices Was
                Properly Submitted in Reply................................................................................18

IV.     CONCLUSION....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Baugh v. City of Milwaukee*,
    823 F. Supp. 1452 (E.D. Wis. 1993), *aff'd* 41 F.3d 1510 (7th Cir. 1994).......... 2, 5, 6

*Beck v. University of Wisconsin Board of Regents*,
    75 F.3d 1130 (7th Cir. 1996) ................................................................................ 2, 13

*Berndt v. Cleary Bldg. Corp.*,
    No. 11-CV-791-WMC, 2013 WL 3287599 (W.D. Wis. Jan. 25, 2013)............. passim

*Catley v. Graphic Commc'ns Int'l Union, Local 277-M*,
    982 F. Supp. 1332 (E.D. Wis. 1997)....................................................................... 14

*Dietrich v. Trek Bicycle Corp.*,
    297 F. Supp. 2d 1122 (W.D. Wis. 2003) ................................................................ 13

*Digene Corp. v. Third Wave Techs., Inc.*,
    No. 3:07-cv-00022-BBC, 2007 WL 4939047 (W.D. Wis. Dec. 28, 2007) .............. 13

*Dillard v. Ron Weber & Associates of Illinois, Inc.*,
    No. 96-C-50375, 1999 WL 33214 (N.D. Ill. Jan. 22, 1999).................................... 13

*INVISTA North Am. S.a.r.l. v. M & G USA Corp.*,
    No. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25, 2013 ........................ 12

*Kolody v. Simon Mktg., Inc.*,
    No. 97-CV-0190, 1998 WL 578527 (N.D. Ill. Sept. 3, 1998) ................................. 14

*Macrovision Corp. v. VSA Ltd.*,
    No. 88-cv-315-FR, 1990 WL 66564 (D. Or. May 7, 1990)..................................... 13

*Tishcon Corp. v. Soundview Commc'ns, Inc.*,
    No. 1:04-CV-524-JEC, 2005 WL 6038743 (N.D. Ga. Feb. 15, 2005)..................... 12

*Viero v. Bufano*,
    925 F. Supp. 1374 (N.D. Ill. 1996) ........................................................................ 14

<u>Rules</u>

Fed. Rule Civ. Proc. 6(c)(2)................................................................................................ 2

Fed. Rule Civ. Proc. 26..................................................................................................... 13

## I.      **INTRODUCTION**

All of the evidence Apple seeks to strike easily meets the standard for appropriate reply material.  The declarations, documentation, and expert testimony submitted directly respond to arguments and facts raised by Apple and fall within the scope of arguments made by WARF in its opening post-trial briefs.  This is not a situation where arguments are being made for the first time in a reply brief.  Rather, the post-trial motions here include complex issues, for which WARF should be allowed to present—and the Court should consider—a full record.

A specific example that underscores this point is the expert testimony that WARF submitted in reply on its motion for equitable relief, which both falls within the scope of WARF's opening brief and properly responds to new facts and arguments raised by Apple in opposition.  In advance of the motion WARF asked Apple to provide information on the design of its A9 and A9X processors.  Apple refused.  In its opposition, ███████████████████

███████ █████████████████████████████████████████

███████████████████████████████████████████

███████████████████████.  These changed circumstances (standing alone or as put into context by WARF's experts) necessitate enhancing the ongoing royalty.  Apple's tactical decision to spring these key facts on WARF in opposition cannot deprive WARF of an opportunity to reply.

Similarly, WARF's submission regarding prejudgment interest is appropriate reply to specific arguments Apple raised regarding appropriate interest rates to apply. WARF's submission regarding its licensing practices demonstrates that Apple's continued infringement restricts WARF's licensing activities by affecting WARF's ability to promise exclusivity or semi-exclusivity to its licensing partners.  This evidence responds directly to Apple's claim that WARF is not irreparably harmed because its licensing program is not impacted by Apple's

infringement.

As this Court has recognized, consistent with Seventh Circuit precedent, "declarations [that] merely bolster other evidence put forward" in the opening brief or that "respond appropriately to weaknesses identified in [the] opposition brief" are properly admissible in reply. *Berndt v. Cleary Bldg. Corp.*, No. 11-CV-791-WMC, 2013 WL 3287599, at *2 (W.D. Wis. Jan. 25, 2013). The evidence submitted by WARF in reply easily satisfies this standard. Indeed, if Apple truly believed WARF's reply raised genuinely new grounds for relief, Apple presumably would have sought leave to file a sur-reply. It did not. Instead, Apple seeks to deprive WARF's experts of any opportunity to respond to facts that *Apple* concealed for the last two years. This type of gamesmanship should not be rewarded and Apple's motion should be denied.

## II.   <u>LEGAL STANDARD</u>

Apple's primary legal basis for its motion to strike is that Federal Rule of Civil Procedure 6(c)(2) requires supporting affidavits to be served "with the motion," making declarations served with a reply improper. But in one of the most frequently cited cases in this Circuit dealing with motions to strike reply materials, the district court expressly rejected this "hypertechnical reading" of the Federal Rules, holding instead that it would be "absurd to say that reply briefs are allowed but that a party is proscribed from backing up its arguments in reply with the necessary evidentiary material." *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1456 (E.D. Wis. 1993), *aff'd* 41 F.3d 1510 (7th Cir. 1994). *Baugh* went on to announce the correct standard for a motion to strike: "where the reply affidavit merely ***responds to matters placed in issue by the opposition brief*** and ***does not spring upon the opposing party new reasons*** for the entry of [the requested relief], reply papers—both briefs and affidavits—may properly address those issues." *Id.* at 1457 (emphasis added). In addition to affirming the court's decision in *Baugh*, the Seventh Circuit later explicitly adopted this formulation of the legal standard in *Beck v. University of*

- 2 -

*Wisconsin Board of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996).

Consistent with the rule of *Baugh* and *Beck*, the law is clear that declarations to bolster evidence put forward in the original motion brief are permitted in reply. *Berndt*, 2013 WL 3287599, at *2. Even declarations that exceed the scope of the opening motion are proper if they respond to alleged weaknesses identified by the other party in opposition. *See id.* at *2 ("To the extent [the reply affidavits] go beyond the scope of that motion, they respond appropriately to weaknesses identified in [the] opposition brief, and are thus properly submitted in reply."). Similarly, there is no rule prohibiting reply evidence only because it could have been submitted sooner. *See Hammons v. Computer Programs & Sys., Inc. (CPSI)*, No. CIV. 05-0613-WS-C, 2006 WL 3627117, at *14 (S.D. Ala. Dec. 12, 2006) ("Here, CPSI's objected-to supplemental evidentiary submission merely responds to arguments and issues raised in plaintiff's opposition (***albeit in a manner incorporating hundreds of exhibits that could have been filed earlier***), without proffering new grounds for entry of summary judgment. There is nothing improper about CPSI's supplemental submissions, and plaintiff's Motion to Strike is denied.") (emphasis added).

## III.    THE COURT SHOULD DENY APPLE'S MOTION TO STRIKE

### A.    WARF's Reply Declarations Properly Responded to Apple's Admission that ███████████████ and Properly Pointed Out the Flaws in the Davis Declaration

The Court should deny Apple's motion to strike the reply declarations of Ms. Cathy Lawton and Professor Christopher Knittel for at least two reasons. First, these declarations were necessitated by Apple's gamesmanship with respect to the timing of its concession tha ███████

████████████████████████████████████████████████████████████

████    Second, Apple's motion ignores that Ms. Lawton's and Professor Knittel's declarations are narrowly tailored to respond to arguments Apple advanced for the first time in its opposition via the Davis Declaration. This evidence is entirely proper. *See, e.g., Viero v. Bufano*, 925 F.

Supp. 1374, 1380 (N.D. Ill. 1996) ("[I]f [plaintiff] has raised an issue not dealt with by defendants in their initial filing, it is appropriate for defendants to support their final response with properly admissible evidence.").

### 1.    Apple Concealed Key Facts Until After WARF Filed Its Motion

Apple deliberately chose to wait until its opposition ███████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████.

Because Apple successfully blocked virtually all discovery regarding its A9 chip before the October 2015 trial, WARF recognized that the question of whether Apple's A9/A9X chips differed from those found to infringe was uncertain. Accordingly, approximately three weeks before the deadline for filing its opening post-trial briefs, WARF specifically asked Apple to "**let us know how the LSD predictor in the A9 and A9x differs, if at all, from the A7, A8, and A8x and provide the RTL code that can confirm this information**." Dkt. 734-12, Nov. 3, 2015 Letter from Frischling (WARF Counsel) to Marcus & Ellsworth (Apple Counsel) (emphasis added). WARF also requested sales information on Apple's newest A9-containing products. Apple refused all such discovery, asserting that "we do not see the relevance of your request." Dkt. 686-6, Nov. 12, 2015 Email from Ellsworth (Apple Counsel) to Frischling (WARF Counsel). Eleven days later, on the due date required by Rule 59, WARF filed its opening post-trial briefs without clarity on whether Apple's newest products infringe or whether Apple was able successfully to design around the '752 patent.

In its opposition filed one month later, █████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

Dkt. 709, Apple's Equitable Relief Opp. at 64. As explained at length in WARF's reply, and in

the supporting declarations Apple now seeks to strike, this is significant new information with major implications for the ongoing royalty analysis.

Apparently recognizing the import of this late revelation, Apple tries to excuse its untimely disclosure of ██████████████ by arguing that WARF was not prejudiced because WARF already suspected ██████████████. But those suspicions were based only on a handful of documents (likely produced inadvertently), *see* Dkt. 683 at 29-30; Apple's policy throughout the litigation was to block all discovery on its A9 and later products and redact any discussion of those processors in produced documents. *See* Dkt. 59, WARF's Mot. to Compel at 4-10. Apple also succeeded in persuading the Court to shield Apple from A9-related discovery in the *WARF I* case. *See* Dkt. 72, Hearing Tr. at 21:13-17. Thus, for example, WARF never had access to technical manuals, RTL source code, or other materials necessary to analyze the LSD predictor in the A9/A9X chips. ███████████████████████████████

███████ Apple can hardly claim that WARF could have done more in its opening papers. Apple's suggestion that WARF was obligated to submit hypothetical expert declarations based on unverified (and at the time unverifiable) assumptions regarding operation of the A9 is without support in the case law.

Further, WARF argued in its opening brief that ██████████████████████████████ ███████████████████████████████████████ This is not a waiver, as Apple suggests. Instead, it ***supports admitting WARF's reply declarations***—those declarations fall within the scope of WARF's opening brief and do not "spring upon the opposing party new reasons" for granting WARF's motion. *Baugh*, 823 F. Supp. at 1457. *See also* Dkt. 683, WARF's Mot. for Equitable Relief at 29-30 ████████████████████████ ███████████████████████████████████████

██████████████████████████████████████████████ . . . . *This fact,
not available to the jury, weighs in favor of an increased royalty rate for ongoing sales.*").
Accordingly, WARF's discussion of the significance of ████████████████ in its
reply brief and declarations is both within the scope of its opening brief and directly responsive
to new information in Apple's opposition, information WARF repeatedly requested before the
deadline for its opening brief but that Apple refused to provide.

### 2. Ms. Lawton's and Professor Knittel's Declarations Properly Respond to Apple's Theories in Opposition

Apple's motion consistently applies the wrong legal standard by focusing only on
whether WARF's reply evidence could have been disclosed sooner. *See, e.g.*, Dkt. 744, Apple's
Mot. at 4-5 (arguing that WARF "should have included these opinions with its motion and
opening brief" and that the facts "were known to WARF at the time that it filed its motion").
That is not the question. *See, e.g.*, *Hammons*, 2006 WL 3627117, at *14 (denying a motion to
strike "hundreds of exhibits that could have been filed earlier" because they "merely respond[ed]
to arguments and issues raised in plaintiff's opposition"); *Berndt*, 2013 WL 3287599, at *2.
Instead, because Ms. Lawton's and Professor Knittel's declarations properly respond to Apple's
arguments and to Ms. Davis's claims, they should be admitted. *See Baugh*, 823 F. Supp. at 1457
(admitting reply affidavits containing testimony that "respond[s] to a theory of the plaintiffs first
fleshed out in their opposition brief").

In its opening brief seeking an ongoing royalty, WARF argued that a modified *Georgia-Pacific* analysis supports enhancing the jury's awarded rate. *See, e.g.*, Dkt. 683 at 26-33.
WARF's opening brief also explains how certain factors, such as the "utility and advantages of
the patent property over[] old modes or devices," "the benefits to those who have used the
invention," and "the extent to which the infringer has made use of the invention; and any

evidence probative of the value of that use," support an enhanced rate.  *See* Dkt. 683 at 26-30.

Apple disagreed in its opposition, arguing instead that the modified *Georgia-Pacific* analysis in October 2015 would yield the same outcome as a July 2012 or September 2013 negotiation.  *See* Dkt. 709 at 43-47 (claiming that "any changes in the *Georgia-Pacific* analysis here in the post-verdict setting do not favor an increase over the jury's implied rate").  To support this claim, Apple submitted a declaration prepared by its expert Ms. Davis that purported to consider each *Georgia-Pacific* factor as of October 26, 2015.  *See* Dkt. 713.  But Ms. Davis's conclusory analysis ignored key facts and misinterpreted others.  Accordingly, in reply, WARF pointed out the flaws in Ms. Davis's positions and submitted expert declarations addressing these shortcomings.  Specifically, as the headings in her reply declaration make clear, Ms. Lawton simply responded to the following arguments Apple raised in opposition:

- Ms. Davis's argument that the decrease in end product prices for the iPhone 5s, 6, and 6 plus and older generation iPads "suggests that the LSD predictors found in these products are not the basis for the difference in the selling price or profitability of these products."  Dkt. 713, Davis Decl. ¶ 24.  *See also* Dkt. 735, Lawton Decl. ¶¶ 11-13.

- Ms. Davis's argument that the fact that ███████████████████████ ███████████████████████ did not constitute a relevant changed circumstance.  *See* Dkt. 713, Davis Decl. ¶¶ 25-26.  *See also* Dkt. 735, Lawton Decl. ¶¶ 14-22 & Dkt. 683, WARF's Equitable Relief Mot. at 26-30.

- Ms. Davis's failure to address Apple's expansion of its infringement into new product lines, including iPod Touch and Apple TV.  *See* Dkt. 713, Davis Decl. ¶¶ 29-30.  *See also* Dkt. 735, Lawton Decl. ¶¶ 23-31.

- Ms. Davis's arguments regarding the duration of the patent and convoyed sales. *See* Dkt. 713, Davis Decl. ¶¶ 21-23.  *See also* Dkt. 735, Lawton Decl. ¶¶ 32-33.

Ms. Lawton did not "spring" new theories on Apple; she provided her opinion on the weaknesses in Ms. Davis's claims.

Apple identifies three specific opinions as to which it claims "there was nothing preventing Ms. Lawton from disclosing" sooner:  her opinion regarding (i) "the price change in Apple's A7, A8, and A8X" chips; (ii) "███████████████████████████████████ █████████████████████"; and (iii) Apple's new product lines that include the A8 chip.  But in addition to ignoring the proper legal standard, Apple also overlooks that each of these opinions was purely responsive to Ms. Davis's declaration and Apple's arguments in reply.

First, at trial both parties' experts maintained that the pricing cycle of Apple products did not influence valuation of the technology.  *See, e.g.*, Dkt. 675, 2015/10/15 (afternoon) Trial Tr. (Hitt) at 55:9-58:11 (explaining that he calculated one set of apportionment factors for the group of accused processors, the A7, A8 and A8X, without differentiating between the A7 and A8/A8X, which are sold in products that have different price points).  At trial, Ms. Davis agreed, applying the same valuation analysis to both first and second generation products.  *See* Dkt. 675, 2015/10/15 (afternoon) Trial Tr. (Davis) at 96:12-98:10 (explaining that damages should be calculated using an average chip price based on the average manufacturing price of all three accused chips despite the different price points for end products containing those chips).  In support of Apple's post-trial opposition, however, Ms. Davis changed her position and argued that the price cycle that Apple applies to its first and second generation products is relevant to valuation.  *See* Dkt. 713, Davis Decl. ¶ 24.  Ms. Lawton responded by properly pointing out the flaws in Ms. Davis's sudden change in position.

Second, Apple's claim that "WARF simply chose not to have Ms. Lawton provide any opinion" on ███████████████████████████████████ is a gross distortion of the record.  As discussed above, Apple withheld from WARF (and the jury) evidence that it ██████████████████████████████████. ████████████████████████ ████████████████████ was not something Ms. Lawton or other experts could have addressed in the opening briefs.  Similarly, it was not even clear at the time of the opening briefs ████████████████████. Here again, Apple's complaint essentially is that Ms. Lawton failed to speculate in the absence of concrete information available only from Apple. Particularly given that ████████████████████████████████ ████████████████, Ms. Lawton's inability to address these issues in an opening declaration is a problem entirely of Apple's own making.

Finally, Ms. Lawton's discussion of Apple's expanded adoption of its A8 chip was purely responsive to Ms. Davis's unsupported conclusions on *Georgia-Pacific* factor 11.  For that factor, which relates to the "extent to which the infringer has made use of the invention," Ms. Davis completely ignored Apple's expanded reliance on the A8 chip, including its incorporation of that chip into the new iPod Touch and Apple TV products.  *See* Dkt. 713, Davis Decl. at ¶ 29. Ms. Lawton therefore pointed out this oversight in Ms. Davis's analysis, and provided additional evidence to support WARF's position in its opening brief that factor 11 "weigh[s] even heavier in favor of WARF post-judgment."  Dkt. 683 at 26.  *See Berndt*, 2013 WL 3287599, at *2 (refusing to strike declarations that "merely bolster other evidence put forward in plaintiff's motion").

Similarly, Professor Knittel's declaration was narrowly tailored to rebut arguments Apple made for the first time on opposition.  Apple argued in its opposition that "Apple has now

released new products, and the selling price of the products adjudicated at trial (e.g., the iPhone 5s, iPhone 6, and iPhone 6 Plus) has decreased by $100 per unit and therefore are less profitable than at the time of the original hypothetical negotiation (Factors 8 and 12)," citing Ms. Davis's declaration.  Dkt. 709 at 44.  Professor Knittel responded directly to this argument by explaining that the model he presented at trial took these expected price decreases into account, so the decrease in end device prices does not change his conclusion that substantial incremental revenue is attributable to the speed increase enabled by the '752 patent, even after the price drops on older model devices.  *See* Dkt. 732, Knittel Reply Decl. ¶¶ 9-20.  Apple contends that Ms. Davis was "silent" on Professor Knittel's model.  But she was very "loud" in changing her position regarding the impact of price changes on patent valuation.  And her new position directly contradicts the regression analysis that was presented at trial and admitted into evidence by the Court.  Professor Knittel's declaration is therefore responsive to Ms. Davis's unsupported arguments on Apple's pricing.

Apple's remaining criticisms of Professor Knittel's analysis are unfounded.  First, Apple's continued mischaracterization of the law is unavailing—the fact that Professor Knittel *could* have submitted an opening declaration does not prohibit him from providing responsive testimony in reply.  Apple next claims that Professor Knittel's declaration is improper because it "presents expert opinions Dr. Knittel is not qualified to offer," referring to his opinion that "███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Dkt. 732, Knittel Reply Decl. ¶ 20.  But as Professor Knittel explains in his declaration, he is not offering an opinion on the ultimate amount of the ongoing royalty; his opinion is limited to the significance of ████████████████████ in the context of his regression models.  *See id.* at

¶¶ 12, 20.

Finally, Apple claims it is somehow prejudiced by the discussion of ███████████ ████████ in reply.  But, here again, it was Apple who refused to provide information on the ███████ ████████████████████████████████████████████. *See* Dkt. 734-12, Nov. 3, 2015 Letter from Frischling to Marcus & Ellsworth; Dkt. 686-6, Nov. 12, 2015 Email from Ellsworth to Frischling.  And it was Apple that then inserted a discussion of the ████████ into its opposition brief.  The only harm in this case is a harm to WARF—WARF was prejudiced by Apple's ████████████████, which prevented WARF from fully addressing key changed circumstances in its opening brief; and by Apple denying the jury knowledge of ████████████████, ████████████████████ ████████████████████████.  Because WARF limited its reply and supporting declarations to responding to the new facts Apple belatedly revealed and to responding to Apple's new arguments, Apple was not prejudiced by any "surprise" and its motion should be denied.

### 3.    WARF's Reply Brief Arguments Are Proper

The Court should also deny Apple's motion to strike sections of WARF's reply brief.  Apple's motion broadly requests that the Court strike "the arguments in WARF's reply brief that rely on Dr. Knittel's declaration" and on Ms. Lawton's "new analysis," citing a total of 13 pages in WARF's reply.  Dkt. 744, Apple's Mot. at 6-8.  But Apple's motion provides no explanation of why these responsive arguments (which generally also fall within the scope of WARF's opening brief) should be stricken, or which specific arguments are subject to its motion. Given the lack of justification for this blanket request and the lack of clarity on what exactly it seeks to strike, Apple's motion should be denied.

Further, Ms. Lawton's and Professor Knittel's declarations are not critical to WARF's arguments regarding the outcome of an October 2015 hypothetical negotiation. The parties now agree on the key facts that support WARF's motion for an enhanced ongoing royalty rate, including that (i) ████████████████████████████████████████ ████████████████████████████████████████████████████) Apple prevented the jury from knowing these facts, and (iv) Apple expanded its use of the infringing LSD predictor into new product lines, including the iPod Touch and Apple TV. These facts are undisputed. WARF's discussion of them in its reply thus does not depend on any disputed expert testimony. And as Apple admits in its motion, WARF argued in its opening brief that the scope of Apple's infringement supports an enhanced ongoing royalty rate. *See* Dkt. 744, Apple's Mot. at 5 ("WARF even argued in its opening brief supporting its motion for equitable relief that [WARF is entitled to a higher ongoing royalty because] "████████████████████ ████████████████████████████"); Dkt. 683, WARF's Mot. for Equitable Relief at 29-30 (explaining WARF's view that ████████████████████ "*weighs in favor of an increased royalty rate for ongoing sales*"). Accordingly, arguments based on these facts are not new; they were properly disclosed in WARF's motion (to the extent possible based on the facts available at that time) and should not be stricken.

### 4.    The Authority Cited By Apple Is Inapplicable Here

Apple cites a string of cases for the proposition that "[c]ourts routinely strike declarations submitted with reply briefs when they present new facts and arguments that should have been presented in the initial motions." Dkt. 744, Apple Mot. at 3. But the cases Apple cites reveal only that courts strike reply declarations under particular circumstances not applicable here. For example, in *Tishcon Corp. v. Soundview Commc'ns, Inc.*, No. 1:04-CV-524-JEC, 2005 WL 6038743 (N.D. Ga. Feb. 15, 2005), the court struck reply affidavits that were offered as

- 12 -

substitutes for earlier-filed declarations that were successfully challenged.  *See id.* at *8.  The court distinguished that situation from one where reply affidavits respond to arguments raised in the opposition papers.  *See id.* ("[H]ere the declarations submitted by plaintiff with its replies are not limited to addressing an argument initiated by defendants in their responses. Instead, they are offered and intended to replace inadequate evidentiary submissions offered in support of plaintiff's two motions for partial summary judgment.").  In *INVISTA North Am. S.a.r.l. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25, 2013), the court struck portions of an expert declaration submitted with the defendant's reply brief for summary judgment of invalidity which contained new, undisclosed theories of invalidity.  *See id.* at *3. The court did not find that the declaration was intended to respond to arguments raised in an opposition brief; indeed, the defendant apparently made no attempt to justify the late disclosure. *Id.* at n.7 ("M & G has not attempted to justify the admissibility of Dr. Moore's declaration, either in briefing on Invista's first motion to strike or in briefing on summary judgment of invalidity.").  Similarly, in *Dietrich v. Trek Bicycle Corp.*, 297 F. Supp. 2d 1122 (W.D. Wis. 2003), the court struck portions of a reply brief where defendants raised an entirely new theory of relief – that a disputed contract term was invalid as not supported by consideration.  *See id.* at 1128.

In *Macrovision Corp. v. VSA Ltd.*, No. 88-cv-315-FR, 1990 WL 66564 (D. Or. May 7, 1990), the court struck a reply affidavit based on a narrow interpretation of Rule 6(d) that would require all affidavits to be filed with the initial brief.  *See id.* at *5.  But as discussed above, the Seventh Circuit has rejected this interpretation and explicitly permits reply affidavits.  *See Beck*, 75 F.3d at 1134 ("Where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of

summary judgment, reply papers—both briefs and affidavits—may properly address those issues."). Finally, *Digene Corp. v. Third Wave Techs., Inc.*, No. 3:07-cv-00022-BBC, 2007 WL 4939047 (W.D. Wis. Dec. 28, 2007) does not concern reply affidavits at all. In that case, the court considered motions to strike portions of expert reports and declarations under Rule 26 and ultimately struck a handful of paragraphs from one declaration that the court found were not properly supplemental or rebuttal. *See id.* at *1.

Contrary to Apple's suggestion, courts in this Circuit regularly admit reply declarations that present facts and evidence to rebut arguments raised in opposition briefs. *See, e.g.*, *Dillard v. Ron Weber & Associates of Illinois, Inc.*, No. 96-C-50375, 1999 WL 33214, at *1 (N.D. Ill. Jan. 22, 1999) ("RWA submitted Peerman's affidavit to establish its policy with regard to promotions, and to establish that an African-American employee was promoted in accordance with the policy. This evidence was in response to arguments raised in plaintiffs' response briefs and this court is entitled to consider the affidavit."); *Kolody v. Simon Mktg., Inc.*, No. 97-CV-0190, 1998 WL 578527, at *1 (N.D. Ill. Sept. 3, 1998) ("In the instant case, TCCC's affidavits do not raise new issues but merely supplement the affidavit of Philip Mooney as to whether the accused work was independently created by TCCC."); *Catley v. Graphic Commc'ns Int'l Union, Local 277-M*, 982 F. Supp. 1332, 1335-36 (E.D. Wis. 1997) ("[T]he challenged affidavit in this case merely responds to an issue raised by the plaintiff in her responsive brief—it does not raise new factual assertions which would leave the opposing side with no opportunity to respond."); *Viero*, 925 F. Supp. at 1380 ("[I]f [plaintiff] has raised an issue not dealt with by defendants in their initial filing, it is appropriate for defendants to support their final response with properly admissible evidence.").

**B.**     **Responsive Evidence Supporting WARF's Reasonable Prejudgment Interest Claim Should Not Be Stricken**

For many of the same reasons, the Court should not strike the reply evidence supporting WARF's requested prejudgment interest rate, including sections of Ms. Lawton's reply declaration and Dr. Gulbrandsen's declaration on WARF's investment practices.

Turning first to Ms. Lawton's declaration, WARF did not "spring upon" Apple any new issues; Ms. Lawton simply responded to Apple's arguments in opposition.  For example, Apple argued in opposition that "WARF presents no evidence regarding the rates it earns on other investments outside the LTP Fund, or other rates it pays outside the ▮▮▮▮▮, and has not provided any measure of the average rate across all of its investments."  Dkt. 707, Apple Supp. Damages & Interest Opp. at 11.  But as Ms. Lawton explained in her reply declaration, this is incorrect.  WARF produced during the litigation audited financial statements from 2002 through 2014 detailing WARF's operations and investments.  *See* Dkt. 735, Lawton Decl. at ¶¶ 35-36.  WARF's ▮▮▮▮ rate of return was discussed at length in WARF's original motion and Ms. Lawton's declaration in support of that motion.  *See* Dkt. 685, WARF's Mot. at 10-13; Dkt. 687, Lawton Opening Decl. ¶¶ 13, 16-20.  In her reply declaration, Ms. Lawton merely points out, in response to Apple's argument, that the ▮▮▮ rate of return is proper because it reflects ▮▮▮▮▮▮▮▮▮▮▮   *See* Dkt. 735, Lawton Reply Decl. at ¶ 37.

Ms. Lawton also responded to Apple's proposed prejudgment interest rate:  the T-Bill rate.  *See* Dkt. 707, Apple Opp. at 10.  Ms. Lawton's reply declaration demonstrates the economic insufficiency of Apple's proposed rate by comparing it to relevant investment benchmarks and inflation indices, showing by comparison the T-Bill rate Apple proposes is far too low to be considered a reasonable benchmark for WARF's returns on royalty payments it

would have received from Apple.  *See* Dkt. 735, Lawton Decl. at ¶¶ 38-40.

The remainder of Ms. Lawton's declaration responds to Apple's arguments that "WARF has shown no causal connection between the royalty payment periods under any license in the record and the compounding schedule for prejudgment interest."  Dkt. 707, Apple Opp. at 15. Ms. Lawton addressed this is in her opening declaration, Dkt. 687 at ¶ 13, and in response to Apple's criticisms, Ms. Lawton further bolstered her original opinion by explaining that the quarterly payment of royalties "provides the factual basis for the timing of the receipt of the royalty payments and when interest would begin to be earned."  Dkt. 735 at ¶ 42.  Ms. Lawton also responded to Apple's argument that the ▮▮▮▮ interest on WARF's LTP Fund is not compounded quarterly by explaining that "[i]nvestment funds like the LTP do not 'compound interest' at all."  *Id.* at ¶ 43.  Instead, funds "earn investment returns that are generally reported on at least a quarterly (and often monthly) basis."  *Id.*

Apple suggests that Ms. Lawton's declaration should be stricken because it is not responsive to Ms. Davis's declaration, which, as Ms. Lawton pointed out, "does not substantively address the issue of prejudgment interest."  *See* Dkt. 744, Apple Mot. at 6.  But as discussed above, Ms. Lawton's declaration is properly responsive to Apple's ***arguments*** and ***criticisms*** raised in its opposition brief.  That is all the law requires.  *See Berndt*, 2013 WL 3287599, at *2 ("To the extent [the reply affidavits] go beyond the scope of that motion, they respond appropriately to weaknesses identified in [the] opposition brief, and are thus properly submitted in reply.").  Apple's failure to provide evidentiary support for its own arguments does not justify striking Ms. Lawton's proper rebuttal evidence.

Similarly, Dr. Gulbrandsen's Declaration in Support of WARF's Motion for an Accounting, Supplemental Damages Through the Date of Judgment, Prejudgment Interest and

- 16 -

Post-Judgment Interest (Dkt. 731) does not submit any new facts or evidence not already presented in WARF's original motion and supporting declarations.   To the contrary, Dr. Gulbrandsen's declaration responds to Apple's demand, in its opposition, for extraordinary specificity regarding depositing of royalty payments WARF would have received from Apple.

As WARF explained in its original motion, the ███████ rate of return for WARF's LTP Fund properly reflects what WARF would actually have earned on any royalties or profits it received from Apple because "funds WARF receives for intellectual property licensing or recoveries typically become part of WARF's invested endowment, as explained in more detail in the concurrently filed Lawton declaration."   Dkt. 685, WARF Mot. at 10.   In preparing her opening declaration, Ms. Lawton interviewed WARF employees with knowledge of WARF's investment activities, including:   "Steve Mixtacki, WARF Chief Financial Officer," "Carrie Thome, WARF Chief Investment Officer," and "Jon Mecoli, WARF Senior Investment Analyst."   Dkt. 687, Lawton Opening Decl. at ¶ 5.   Ms. Lawton explained that "███████████████████ ███████████████████████████████████████████████████████████   *Id.* at ¶ 16.   Ms. Lawton further explained that, for example, "████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████   *Id.* at ¶ 17.

Despite this substantial evidence that ███████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████, Apple argued in its opposition that WARF has not proven that it would have actually invested all of the royalties it received from Apple into its LTP Fund.   *See* Dkt. 707, Apple Opp. at 10-13.   Dr. Gulbrandsen's reply

declaration merely echoes the statements made in Ms. Lawton's original declaration and states

that, consistent with the evidence already presented, his expectation is that ██████████████

████████████████████████████████████████████████████████████████████████████

████████   Dkt. 731 at ¶¶ 2-4.  Because this evidence is directly responsive to Apple's arguments

raised in opposition, it is properly submitted in reply.  *See Berndt*, 2013 WL 3287599, at *2

(admitting reply evidence to "bolster other evidence put forward in plaintiff's motion" and to

"respond appropriately to weaknesses identified in [the] opposition").

### C.   Purely Responsive Evidence of WARF's Licensing Practices Was Properly Submitted in Reply

Apple also objects to portions of WARF's reply brief relating to WARF's request for a

permanent injunction, supported by Dr. Gulbrandsen's Declaration in Support of WARF's

Motion for Equitable Relief, Dkt. 733, and Exhibits 6, 7, and 8 to the Reply Declaration of Amy

Proctor.  WARF's reply raises no new issues and properly responds to Apple's Opposition to

WARF's Motion for Equitable Relief.

The only issue Apple claims is new in reply is "WARF's argument concerning its

purported desire to maintain exclusivity over its patents."  *See* Dkt. 744, Apple's Mot. to Strike

at 10.  Apple cannot credibly contend that, having read WARF's motion for a permanent

injunction, it did not realize that WARF desired to maintain some level of exclusivity over its

patents.  Indeed, the very first sentence of WARF's argument in its opening brief concerns

WARF's desire to exclude:  "A patentee's right to exclude is a fundamental tenet of patent law."

Dkt. 683, WARF's Mot. for Equitable Relief at 4.  Apple clearly understood the argument

because its first argument in opposition was that WARF had no legitimate interest in maintaining

exclusivity over its patents.  *See* Dkt. 709, Apple's Equitable Relief Opp. at 5 ("In effect, WARF

asks this Court to issue an injunction against Apple so that WARF can use the injunction as

leverage in its efforts to force other companies to license its patents.").

WARF explained at length in its original motion that injunctive relief is necessary to allow WARF to conduct a voluntary licensing program wherein WARF can choose to license its patents to companies on fairly negotiated terms, including both monetary and non-monetary terms. *See, e.g.*, Dkt. 683, WARF Mot. at 5-7, 17-18. In response, Apple argued that WARF's ability to license its patents was not impacted by Apple's continued infringement. *See* Dkt. 709, Apple's Equitable Relief Opp. at 8 ("[E]ven without an injunction, WARF is free to license the '752 patent as it sees fit. That Apple has been found by a jury to infringe does not restrict WARF's licensing activities in any way, which undermines WARF's claim of irreparable harm."). WARF's reply brief, supported by Dr. Gulbrandsen's declaration and evidence from WARF's website, responds directly to this point. Apple's continued infringement ***does*** restrict WARF's licensing activities because it affects WARF's ability to promise exclusivity or semi-exclusivity to its licensing partners. If WARF cannot control whether Apple continues to use WARF's patented technology, even after a jury found the patent infringed and valid and the PTAB rejected Apple's IPR challenge, WARF's licensees will have little reason to expect that WARF can promise exclusive rights to any of its patents.

As Dr. Gulbrandsen's declaration indicates,



*See* Dkt. 733, Gulbrandsen Decl. ¶ 2. Exhibit 7 to the Reply Declaration of Amy Proctor provides further support, showing that WARF's standard licensing agreement for start-up companies contemplates an exclusive licensing arrangement. *See* Dkt. 734-7 ("Exclusive Start-up Company License Agreement," publicly available on

WARF's website).[1]  As WARF explained in its motion, "[o]ne of WARF's primary goals is to support start-up companies, primarily in Wisconsin, that practice the inventions generated at the University of Wisconsin."  Dkt. 736, WARF's Equitable Relief Reply at 2.  This evidence shows that contrary to Apple's assertion, ███████████ WARF's licensees have a vested interest in WARF's ability to maintain exclusivity over its patents.  This is precisely the type of evidence that this Court admits in reply.  *See Berndt*, 2013 WL 3287599, at *2 (admitting "declarations [that] merely bolster other evidence put forward" in the opening motion; "To the extent [the reply declarations] go beyond the scope of that motion, they respond appropriately to weaknesses identified in [the] opposition brief, and are thus properly submitted in reply.").

## IV.    **CONCLUSION**

Because all of the evidence and argument Apple moves to strike is properly responsive to Apple's oppositions, WARF respectfully requests that the Court deny Apple's motion to strike in full.

---

[1] Apple also objects to Exhibits 6 and 8 to the Reply Declaration of Amy Proctor.  These exhibits are printouts of pages on WARF's website that simply provide additional background information on WARF's licensing process.  *See* Dkt. 734-6; Dkt. 734-8.  Neither is cited in WARF's reply brief.

Respectfully submitted,

Dated:  February 15, 2016                    By:  _____/s/ Jennifer L. Gregor_____

Morgan Chu
Gary Frischling
Jason Sheasby
Alan Heinrich
Christopher Abernethy
Amy Proctor
Tony Rowles
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199
MChu@irell.com; GFrischling@irell.com;
JSheasby@irell.com; AHeinrich@irell.com;
CAbernethy@irell.com; AProctor@irell.com;
TRowles@irell.com

Jennifer L. Gregor
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI  53703
Telephone:   (608) 257-3911
Facsimile:    (608) 257-0609
JGregor@gklaw.com

*Attorneys for Plaintiff*
*Wisconsin Alumni Research Foundation*

6868256